

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 19, 1971

Honorable Ben Atwell
Chairman, Committee on
Revenue & Taxation
House of Representatives
Capitol Building
Austin, Texas

Opinion No. M-864

Re: Constitutionality of
Sections 1 and 2, House
Bill 1674, 62nd Legis-
lature, R.S., 1971.

Dear Mr. Atwell:

In your letter requesting the opinion of this Office on
the above captioned matter you have provided us with a copy
of Section 1 of House Bill No. 1674, 62nd Legislature, Reg-
ular Session, 1971, which reads as follows:

"Section 1. Section (9), Article 7.08, Title 122A,
Taxation-General, Revised Civil Statutes of Texas,
1925, as amended, is further amended to read as
follows:

"'(9) The State Treasurer shall require that pay-
ment in full for stamps or meter settings be made
within fifteen (15) days from the date the stamps
or the set meter are received by the distributor.
In each fiscal year, payment for stamps and meters
received in August of that year shall be paid in
full on or before August 31 no matter when pur-
chased or received by the distributor during that
month. Upon receipt of an order for stamps or the
setting of a meter, the State Treasurer shall ship
such stamps or set such meter in compliance with
the order and transmit with the stamps or the met-
er a certified statement showing the amount due
for said stamps or meter setting, and the distrib-
utor shall forward a remittance as payment in
full of the amount certified as due by the State
Treasurer within fifteen (15) days after receipt
of the stamps or the set meter and the certified
statement, or for stamps and meters received in

August of each fiscal year in full on or before August 31 no matter when purchased or received by the distributor during that month. However, in order to secure the payments of the tax as provided in this Section, a distributor must file with the State Treasurer a surety bond, approved by the State Treasurer and the Attorney General, with a corporate surety authorized to do business in this State, conditioned upon payment in full for the stamps or meter settings within the time specified in this Section. Payment by a company check or by personal check of a bonded distributor shall be treated as cash payment when received by the State Treasurer for payment of stamps or meter settings received by the bonded distributor. The State Treasurer shall fix the amount of the bond, in an amount equal to one and one-half times the credit in stamps and/or meter settings requested by the distributor and approved by the State Treasurer for the purchase of stamps and/or meter settings during the succeeding month. Any distributor who fails to forward the proper remittance by the due date shall be notified by the State Treasurer within five (5) days after the due date to appear within five (5) days before the Treasurer to show cause why he should not be denied the privilege of ordering stamps as herein provided, and if such distributor shall fail to show good cause, the Treasurer is hereby authorized to discontinue the shipment of stamps or the setting of meters as provided in this Section and to enforce payment of the bond.' "

You have also advised us as follows:

"The underlined portion of Section 1 is new language providing for the State Treasurer to consider personal checks from bonded distributors as cash when received, thus providing such distributors with the full 15 day payment period contained in the present law. At the present time, the Treasurer does not consider payment as received until personal

checks have cleared the bank on which they are drawn."

In McCarty v. James, 453 S.W.2d 220 (Tex.Civ.App. 1970, error ref. n.r.e.), the Court considered the 1969 amendment[1] of Section (9) of Article 7.08[2]. This article allows the distributor 15 days from the date the stamps or meter settings are received to make payment therefor. The Court held that the amendment did not violate Section 50 of Article III[3] of the Texas Constitution because it did not amount to an extension of the State's credit to the distributor. The court pointed out that even though the distributor has certain duties and liabilities in the collection of the tax, the ultimate tax debt is owed by the user or consumer of cigarettes.

After so holding, the Court said at page 224:

"The Treasurer suggests that the distributor before he pays for the tax stamps under H.B. 1158, may stamp and sell the cigarettes without paying the tax to the State. The State has guarded against this improbability by requiring an adequate bond."

---

1. Acts, 1969, 61st Leg., Reg. Session, ch. 17, p. 1405.
2. Title 122A, 20A, Taxation-General, V.C.S.
3. Section 50 of Article III reads as follows:

"The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

The amendment we are now considering requiring the
State Treasurer to treat personal checks of bonded dist-
ributors as the equivalent of cash payments when received
as cash payment for stamps or meter settings does not
purport to affect the safeguard of the adequate bond re-
ouirements of the statute.  It does not say that the Treas-
urer shall treat personal checks as "payment in full"
but rather as "cash payments".  Under the proposed amend-
ment, the distributor must still file the surety bond,
approved by the State Treasurer and the Attorney General,
with a corporate surety authorized to do business in this
State, conditioned upon payment in full for the stamps
or meter settings within the stated statutory time.  The
State Treasurer must fix the amount of this bond in an
amount equal to one and one-half times the amount in
stamps or meter settings to be sent.  The statute speaks
of the time of sending in terms of "the succeeding month".
But it is evident that any bonded distributor's order
in excess of the amount covered by an existing bond can-
not be filled at any time until an adequate bond has been
furnished to and approved by the State Treasurer and the
Attorney General of Texas.

We therefore think that the provision of the proposed
amendment which requires the Treasurer to treat personal
checks of bonded distributors as the equivalent of cash
payment when received as payment for stamps or meter set-
tings is consistent with the requirements of Section 50
of Article III of the Texas Constitution under the reason-
ing and the holding of the McCarty case, supra; and you
are therefore advised that it is constitutional in that
respect.

Even if the Treasurer's treatment of personal checks
as cash payment were to be construed as changing the re-
quirement that bonds be conditioned upon payment in full
for the stamps or meter settings, as in a case when an
order or orders exhausts the amount of an existing bond,
there is nothing in the Constitution which requires that
a payment such as is made by a distributor to the State
Treasurer, or even a payment of a tax, must be secured by
a bond conditioned upon  payment in full of said payment.
The language in the McCarty case, quoted at page 4 of this
Opinion, is not a part of the holding of that case.  It is
explanatory of the court's decision in that it states the

court's view of the statutory scheme rather than the grounds of its decision on the constitutional question involved. However, as we have previously stated, we do not think the amendment has any effect on the bond requirements of the statute. First, because such a holding would be in the "teeth" of the plain language of the bond provisions of the statute. Second, because if the amendment be subject to interpretation, under well-settled rules of construction, we reach the same result. A few of such rules are those denying repeals or amendments by implication, requiring that parts of a statute be harmonized whenever possible, that it be given a practical and workable effect, and that the Legislature will never be assumed, much less presumed, to have intended to accomplish an inequitable much less an absurd result.

But regardless of one's view of a resulting distinction in bond requirements in cases where the taxpayer tenders his personal check as payment for orders and cases where orders are filled on the strength of a previously filed bond alone, these matters are within the sole discretion of the Legislature subject to constitutional inhibitions; and we find none. Furthermore, should we be in error in this and there be a possible question of constitutionality on the basis of unreasonable classification or unequal protection of the law, we think that a taxpayer who tenders his personal check falls in an entirely different category from one who has filed only the requisite bond since he has assumed an additional liability and subjected himself to entirely different results, penal, or otherwise, as the facts may be, which may ensue from any insufficiency of funds to cover the tendered personal check.

We pass now to a consideration of the constitutionality of Section 2 of House Bill No. 1674. Section 2 amends Article 7.10[4]. The first paragraph of this Article requires

---

4.    Title 122A, 20A Taxation-General, V.C.S.

every person, other than a distributing agent, bonded distributor or common carrier, to obtain stamps from the State Treasurer and affix them to any unstamped cigarettes in their possession. This paragraph of Article 7.10 remains unchanged by the proposed amendment.

The final paragraph of Article 7.10 as it is presently enacted reads as follows:

> "Every distributor in this State shall cause all cigarettes received by him to have the requisite denominations and amount of stamps affixed to represent the tax as levied herein; provided, however, that any distributor who has obtained from the Treasurer and has in his possession the requisite amount and number of stamps necessary to stamp all cigarettes received by him may hold such cigarettes from [sic] a period of not longer than ninety-six (96) hours, excluding Saturdays, Sundays, and legal holidays, before affixing the stamps as required herein."

In the proposed amendment, the second paragraph reads as follows:

> "Every distributor in this State shall cause all cigarettes received by him to have the requisite denominations and amount of stamps affixed to represent the tax as levied herein, within ninety-six (96) hours, excluding Saturdays, Sundays, and legal holidays, after receiving delivery of them."

The only change effectuated by this portion of the amendment is to require every distributor to have the requisite denominations and amount of stamps affixed to all cigarettes received by him within the 96-hour period regardless of whether the distributor had previously obtained from the Treasurer and presently had within his possession the requisite amount of stamps. As we view it, this is a measure designed to facilitate and effectuate the overall purposes of the Cigarette Tax Law, the primary purpose, of course, being the collection of the State's revenues. Such measures are within the special province of the Legislative branch of the State government; and we find nothing on the face of this change in the statute to indicate any abuse of Legislative power. Section 2 is constitutional.

## S U M M A R Y

The provision of Section 1 of H.B. 1674, 62nd Legislature, Regular Session, 1971, allowing personal checks of bonded distributors to be treated as cash payments by the State Treasurer when received for payment of cigarette stamps or meter settings does not violate Section 50 of Article III of the Texas Constitution.

Section 2 of H.B. 1674, requiring all cigarettes to be stamped by all distributors within a stated period is proper exercise of Legislative discretion in the manner of collecting the State's revenues.

Yours very truly,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Marietta McGregor Payne
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James Broadhurst
John Reeves
Arthur Sandlin
Robert Lemens

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant