W. A. McCARTY, Jr., Appellant,

v.

Jesse JAMES, Treasurer of the State of Texas, Appellee.

No. 11728.

Court of Civil Appeals of Texas, Austin.

April 8, 1970.

Rehearing Denied April 29, 1970.

Frank Hoagland, Wroe Owens and Phil Mockford, Austin, for appellant.

Crawford C. Martin, Atty. Gen., Nola White, 1st Asst. Atty. Gen., Hawthorne Phillips, Exe. Asst. Atty. Gen., John R. Grace, W. E. Allen and Louis G. Neumann, Asst. Attys. Gen., for appellee.

HUGHES, Justice.

This suit is for a declaratory judgment. It was filed by W. A. McCarty, Jr., for the use and benefit of McCarty-Hull Cigar Company, Inc., of which he is president and general manager, and for the use and benefit of other interested wholesalers of tobacco products in the State of Texas. The defendant was Jesse James, Treasurer of the State of Texas, in his official capacity.

While numerous declarations of law are sought they all involve the constitutionality, vel non, of H.B. 1158, Acts 61st Leg.Reg. Sess., p. 1405 (1969) which amended Section (9), Article 7.08, Title 122A, Taxation-General, Texas R.C.S., 1925, V.A.T.S., as last amended by ch. 1, Acts, 56th Leg. 3rd Called Sess., 1959, to read as follows:

"(9) The State Treasurer shall require that payment in full for stamps or meter settings be made within fifteen (15) days from the date the stamps or the set meter are received by the distributor. In each fiscal year, payment for stamps and meters received in August of that year shall be paid in full on or before August 31 no matter when purchased or received by the distributor during that month. Upon receipt of an order for stamps or the setting of a meter, the State Treasurer shall ship such stamps or set such meter in compliance with the order and transmit with the stamps or the meter a certified statement showing the amount due for said stamps or meter setting, and the distributor shall forward a remittance as payment in full of the amount certified as due by the State Treasurer within fifteen (15) days after receipt of the stamps or the set meter and the certified statement, or for stamps and meters received in August of each fiscal year in full on or before August 31 no matter when purchased or received by the distributor during that month. However, in order to secure the payments of the tax as provided in this Section, a distributor must file with the State Treasurer a surety bond, approved by the State Treasurer and the Attorney General, with a corporate surety authorized to do business in this State, conditioned upon pay-

ment in full for the stamps or meter settings within the time specified in this Section. The State Treasurer shall fix the amount of the bond, in an amount equal to one and one-half times the credit in stamps and/or meter settings requested by the distributor and approved by the State Treasurer for the purchase of stamps and/or meter settings during the succeeding month. Any distributor who fails to forward the proper remittance by the due date shall be notified by the State Treasurer within five (5) days after the due date to appear within five (5) days before the Treasurer to show cause why he should not be denied the privilege of ordering stamps as herein provided, and if such distributor shall fail to show good cause, the Treasurer is hereby authorized to discontinue the shipment of stamps or the setting of meters as provided in this Section and to enforce payment of the bond."

In a non-jury trial, the trial court rendered judgment holding H.B. 1158 unconstitutional and denying appellant any relief.

The facts were stipulated. They are, in substance, that appellant, a licensed dealer in tobacco products, including cigarettes,

acting pursuant to the provisions of H.B. 1158 demanded that the State Treasurer sell cigarette stamps to him and allow him fifteen days for payment, appellant offering to provide the bond required by the statute. The State Treasurer refused to comply with this demand on the sole ground that H.B. 1158 was unconstitutional.

The Treasurer contends that H.B. 1158 violates Sec. 50 of Art. III of the Constitution of Texas, Vernon's Ann.St., which provides:

"Sec. 50. The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

We are of the opinion that H.B. 1158 does not violate Sec. 50 of Art. III of our Constitution for the reason that it is not an extension of credit to any one owing a debt to the State of Texas.

We copy below some sections of the Cigarette Law which are discussed in this opinion.[1]

1. "(1) A tax of Two Dollars ($2) per thousand on cigarettes weighing not more than three (3) pounds per thousand and Four Dollars and Ten Cents ($4.10) per thousand on those weighing more than three (3) pounds per thousand is hereby imposed on all cigarettes used or otherwise disposed of in this State for any purpose whatsoever. The said tax shall be paid only once by the person making the 'first sale' in this State and shall become due and payable as soon as such cigarettes are subject to a first sale in Texas, it being intended to impose the tax as soon as such cigarettes are received by any person in Texas for the purpose of making a 'first sale' of same."

"(2) Payment of such tax shall be evidenced by stamps purchased from the Treasurer and securely affixed to each individual package of cigarettes covering the tax thereon as imposed by this Chapter;"

"(3) The impact of the tax levied by this Chapter is hereby declared to be on the vendee, user, consumer or possessor of cigarettes in this State and when said tax is paid by any other person, such payment shall be considered as an advance payment and shall thereafter be added to the price of the cigarettes and recovered from the ultimate consumer or user." Art. 7.02.

"(8) 'First Sale' shall mean and include the first sale or distribution of cigarettes in intrastate commerce, or the first use or consumption of cigarettes within this State, or the loss of cigarettes in this State whether by negligence, theft, or any other unaccountable loss." Art. 7.01.

All statutory references in this opinion are to the Cigarette Tax Law, ch. 7, Vol. 20A, V.T.C.S., unless otherwise noted.

The Treasurer argues that "A cigarette tax stamp, like a postage stamp, is itself valuable property. A postage stamp shows that a sender has paid for the service of having a letter or other postage item handled by the Post Office. The cigarette tax stamp is conclusive evidence that the tax due the State has been paid and satisfied. To permit a distributor to purchase such property evidencing the satisfaction of tax liability and pay for such at a future date would be an extension of credit by the State and thus in violation of Art. III, Section 50 of the Constitution of Texas."

There are similarities between postage stamps and cigarette tax stamps. They are both stamps. A postage stamp, in addition to the characteristic given it by the Treasurer, may be purchased, sold, owned or possessed by anyone, except postal employees, without restriction. It frequently passes from hand to hand in commercial transactions as does money. On the other hand, a cigarette tax stamp is nothing more than a tax receipt. Whether this stamp is conclusive evidence of payment of the tax is a question not before us, but this is extremely doubtful. Cigarette stamps, while they may be stolen and unlawfully used, are not open to purchase and sale by everyone. They may only be sold by and purchased from the Treasurer or under his direction. Arts. 7.05, 7.29(3). The sale of stamps by the Treasurer shall, with some exceptions, be made only to a licensed distributor whose duty it is to affix the stamp to the cigarette package. Art. 7.08.

It is obvious that the scheme of the Cigarette Tax Law is not for the purpose of selling cigarette tax stamps but the aim of the law is to facilitate and safeguard the collection of taxes imposed on the use or disposal of cigarettes. Art. 7.02. The sale of such stamps is incidental to this purpose. It is not a commercial transaction in the same sense that the sale of postage stamps is.

We copy the following from the brief of the Treasurer:

"By the express provisions of Section 1, Article 7.02, Title 122A, Taxation-General, it is stated that the cigarette tax shall be paid as follows:

'* * * The said tax shall be paid only once by the person making the "first sale" in this state and shall become due and payable as soon as such cigarettes are subject to a first sale in Texas, it being intended to impose the tax as soon as such cigarettes are received by any person in Texas for the purpose of making the "first sale" of same. * * *'

Section 2 of such Article 7.02 states:

'Payment of such tax shall be evidenced by stamps purchased from the Treasurer and securely affixed to each individual package of cigarettes covering the tax thereon as imposed by this Chapter; * * *'

In addition to the foregoing, Article 7.10 of Title 122A, Taxation-General, provides that distributors receiving unstamped cigarettes in the State of Texas must affix the cigarette stamps that have been purchased from the State Treasurer to such cigarettes within ninety-six (96) hours from the time of receipt of such unstamped cigarettes, exclusive of Saturdays, Sundays and other legal holidays.

These statutes are explicit. The cigarette tax is due at the time that cigarettes 'are received by any person in Texas for the purpose of making the first sale of same' and the 'payment of such tax shall be evidenced by stamps purchased from the Treasurer.' The language of these statutes is plain, explicit and unambiguous."

■ The Treasurer says subsequently in his brief, "It is the distributor who has the tax liability on cigarettes and he pays such tax when he purchases cigarette - tax stamps."

We do not believe the conclusion of the Treasurer jibes with the statutes.

The cigarette tax is ultimately paid by the vendee, user, consumer or possessor of cigarettes. Art. 7.02(3). It is actually paid by the person making the "first sale" in Texas. Art. 7.02(1). If any person other than those named in Art. 7.02(3) pays the tax this is an "advance payment" of the tax which may be added to the price of cigarettes and recovered from the ultimate consumer or user. Art. 7.02(3). The distributor when he purchases cigarette stamps and pays for them, makes an "advance payment" of the tax which they represent. He does not become liable for the tax which remains the liability of the consumer or user of the cigarettes. If the stamps purchased by the distributor are not used, they may be redeemed. Art. 7.08(7).

It is our view that the distributor or person having possession of cigarettes for the purpose of making a "first sale" of them is a tax collector whose duty and burden is to collect the tax in the manner prescribed and who is subject to statutory penalties for his failure to do so. In this role he is in much the same role as a retailer of items taxable under the Sales, Excise and Use Tax. Art. 20.01, Taxation-General, Vol. 20A, V.T.C.S. This tax was considered by the Supreme Court in Calvert v. Canteen Company, Tex., 371 S.W.2d 556 (1963) where the retailer contended that the statute was unconstitutional because it required him "to pay the debts of another, i. e., the tax is upon the consumer, whose debt it is,[2] but respondents are required to pay it." In overruling this argument, the Court said, "Respondents are not required to pay the taxes of someone else. The tax is upon the transaction and is collectible from the consumer * * *." See also Reaves and Becker Company v. Wilkes Company, Tex.Civ.App. 392 S.W.2d 379, writ dismissed (1965) by this Court where a retailer sued a purchaser for sales taxes which the retailer had failed to collect. We allowed a recovery, saying, "The stat-

ute did not state when the tax was to be collected nor did it state that if the retailer fails to add the tax on the invoice that is originally sent that the tax is not due and owing. The law merely states that the retailer shall collect the sales tax due and owing to the State from the consumer."

■ We believe the statutes and these authorities refute the contention of the Treasurer that in extending the time for the distributor tax collector to pay for tax stamps purchased by him extends him credit for payment of a debt he owes the State. The distributor does have liabilities and responsibilities in the collection of this tax, but the tax debt is owed by the user or consumer of cigarettes.

The Treasurer suggests that the distributor before he pays for the tax stamps under H.B. 1158, may stamp and sell the cigarettes without paying the tax to the State. The State has guarded against this improbability by requiring an adequate bond.

■ Regardless of when tax liability arises or when taxes become due and payable a reasonable time usually and probably of necessity, is given the taxpayer for making payment. The Legislature is the sole arbiter of the time to be allowed. It has exercised this authority in many instances.

State and County ad valorem taxes are due and payable October 1st of each year.[3] Yet, the statute provides that these taxes may be paid over a period of months without penalty. See Art. 7336, Vernon's Ann. Tex.Civ.St.

The tax on cigarettes is a consumer-user tax. Art. 7.02(3). There are other consumer-user taxes where the tax actually paid is not immediately forwarded to the

---

2. See Art. 20.021(A), Taxation-General, Vol. 20A, V.T.C.S.

3. Wall v. Club Land and Cattle Co., 88 S.W. 534, Tex.Civ.App., Fort Worth, no writ (1905), Arts. 7255–7256, V.T.C.S.

State by the person collecting it. Some examples follow:

1. Motor Fuel (Gasoline) Tax—Article 9.01 et seq., Title 122A, Taxation-General, V.T.C.S.

By the provisions of Article 9.03 the distributor required to collect or pay the tax is required upon or before the 25th day of each calendar month to remit or pay over to the State the amount of tax required to be collected during the calendar month next preceding.

2. Special Fuels Tax—Article 10.01 et seq., id.

By the provisions of Article 10.13 suppliers and dealers required to collect the tax as well as users required to pay same are required on or before the 25th day of each calendar month to pay the amount of such taxes required to be collected or paid during the month next preceding.

3. Admissions Tax—Article 21.01 et seq., id.

By the provisions of Article 21.01 the owner or operator of any place of amusement is required to make quarterly reports on the 25th day of January, April, July and October for the quarter ending the last day of the preceding month. Such person is further required to pay the tax at the time of making the report.

4. Limited Sales Excise Tax—Article 20.01 et seq., id.

The provisions of Article 20.05 impose an obligation upon the party collecting the tax to make quarterly returns and at the same time to make payment of the tax. Both the returns and the tax payments cover the preceding quarter.

5. Hotel Occupancy Tax—Article 23.01 et seq., id.

The provisions of Article 23.04 require the person to collect the tax to file his occupancy report quarterly and to pay the tax at the time of filing. The report and the tax covers the preceding quarter.

6. Tax on Beer—Article 667–23 et seq., Vernon's Ann.Texas Penal Code, Title 11, Texas Liquor Control Act, V.T.P.C.

By the provisions of Article 667–23¼ the importer or manufacturer of beer is obligated to make a report to pay the tax to the State by the 15th day of the month following that month in which said beer is imported or the first sale occurs.

7. Tax on Ale and Malt Liquor—Article 667–33, id.

The provisions of Article 667–33 impose an obligation upon the importer or manufacturer of ale or malt liquor to file statements and pay the tax imposed by the 10th of the month following the month of importation or first sale.

8. Tax on Liquor—Article 666 et seq., id.

Article 676–21⅛ added by Senate Bill 27 passed by the Sixty-first Legislature provides for payment of the tax on liquor by the importation permit holder by the 15th day of the month following the first sale of the product.

Rank confusion and irreparable harm to the State would result if we were to render a decision which would give color of authority to the invalidity of these taxing statutes.

When cigarette stamps are sold for cash this means that the taxes which they represent are paid in advance by one upon whom ultimate liability for the tax does not fall. [Except as a consumer or user] None of the other consumer-user taxes which we have referred to above makes any provision for advance payment of the taxes imposed. The Legislature, in this instance, has made, and commendably we believe, an effort to partially relieve the burden of the purchaser of cigarette stamps required to pay in advance a tax which he does not owe by granting him fifteen days of grace within which to recoup the cost of the stamps or the tax which they represent.

We do not lightly declare an act of the Legislature unconstitutional. The rule is that if a statute is capable of two constructions, one of which sustains its validity, and the other renders it unconstitutional, it is our duty to give it that interpretation which sustains validity of the act. Cooley's Constitutional Limitations, (8th ed.) Vol. 1, p. 376. Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130.

We construe H.B. 1158 as fixing the time within which a purchaser of cigarette stamps must make an advance payment of the tax which is the debt of the user or consumer.

We reverse the judgment of the Trial Court and render judgment declaring H.B. 1158 not to be unconstitutional.

Reversed and rendered.