**TEXAS STATE BOARD OF PUBLIC
ACCOUNTANCY, Appellant,**

v.

**W. L. FULCHER, d/b/a Fulcher and
Company, Appellee.**

No. 889.

Court of Civil Appeals of Texas,
Corpus Christi.

Sept. 19, 1974.

Rehearing Denied Oct. 31, 1974.

Second Rehearing Denied Nov. 21, 1974.

Bill Campbell, Austin, Sloan B. Blair, Cantey, Hanger, Gooch, Gravens & Munn, Fort Worth, for appellant.

Randall P. Crane, Harlingen, for appellee.

## OPINION

BISSETT, Justice.

This suit was instituted by the Texas State Board of Public Accountancy against W. L. Fulcher to enjoin him from holding himself out to the public as an "accountant" on the ground that he was violating certain provisions of the Public Accountancy Act of 1945 (Art. 41a, Vernon's Ann.Civ.St.). The Texas Society of Certified Public Accountants intervened as a party plaintiff. The trial court, after a trial before the court without a jury, denied the application for injunction on grounds that the Act was unconstitutional, and dismissed the action. Plaintiff and intervenor, hereinafter sometimes called "appellants", have appealed.

The Board alleged that appellee is not registered with the Texas State Board of Public Accountancy either as a public accountant or certified public accountant, that he does not now hold and has never held a live permit for the practice of public accounting issued under any section of the Act, and that he has violated certain provisions of the Act by unlawfully holding himself out as an "accountant". The prayer was that appellee "be enjoined from holding himself out as a public accountant and engaging in the business of public accountancy" until he has complied with the provisions of the Act.

Appellee denied generally the allegations contained in the petition. He further pled that the Act violates rights guaranteed him and others by both the Federal and State Constitutions because it is "ambiguous, contradictory, and prohibitory, rather than regulatory".

The issue here presented is whether the Act, as it is applied to appellee, violates any right or rights guaranteed to appellee by the Constitution of Texas and of the United States. Findings of fact and conclusions of law were made and filed. Since the conclusions of law deal only with constitutional issues, the trial court held that appellee was in violation of the Act, but excused his violation solely on the ground that the Act, as applied to appellee, was unconstitutional. Any other holding would contravene the cardinal principle that a court will not consider a constitutional issue if the case can be decided on other grounds. See 12 Tex.Jur.2d, Constitutional Law, § 32.

Appellee is not a certified public accountant nor is he a licensed or registered public accountant under any of the provisions of the Act. He does not hold a permit for the practice of public accounting under the Act. Appellee admits that he performs accounting services for the general public and uses the designation "accountants" in his business. He further admits that he has held himself out to the public as an "accountant". In addition to preparing income tax returns and furnish-

ing bookkeeping services to his clients, appellee renders general accounting services to the public, which include preparation of financial statements and reports, and designing and implementing accounting and bookkeeping systems. He does not make and prepare certified audits nor does he affix his signature to financial reports or statements in such a manner as to indicate that they are based upon a certified audit. He does, however, sign his name to financial reports and statements. The words "Fulcher & Fulcher, Accountants" appear, on both the building directory in the office building where appellee maintains his place of business and on the entrance door to his office. The words "Fulcher & Company, Accountants" appear as the return address on his business envelopes. Appellee agreed that if a member of the public was seeking an accountant, his business envelope and the sign would be sufficient notice that he was holding himself out to the public as an accountant.

Among other fact findings, the trial court found: appellee held himself out to the public as an accountant; he is well qualified to render accounting services to the general public; there is a need for the services of unlicensed accountants in Texas; and to permit an unlicensed person to practice public accounting would not "confuse the general public into thinking he is licensed by the State as a certified public accountant or public accountant".

In conclusions of law 1, 2 and 3, the court concluded that the current Article 41a is an overextension of the State's police power in that it works a hardship on individuals without offering any commensurate protection benefitting the general public; tends to create a monopoly in a single class when unlicensed practitioners are prohibited from using the word "accountant" to describe their services; and, prohibiting unlicensed accountants from using the word "accountant" to describe their work violates the guarantees of the Bill of Rights and is in conflict with the spirit and express provisions of the Consti-

tution and hence void. The remaining conclusions read, as follows:

"4. Article 41a, current Texas Civil Statutes, is prohibitory rather than regulatory in that it tends to advance the interests of a single class, licensed accountants, at the expense of unlicensed accountants and the public as a whole.

5. Article 41a, current Texas Civil Statutes, denies unlicensed accountants equal protection of the law and is therefore in conflict with both the State and Federal Constitutions.

6. Article 41a, current Texas Statutes, does not accomplish its purpose in a reasonable manner in that unlicensed accountants are not prohibited from practicing accounting but are prohibited from holding themselves out to the public as accountants and the same is therefore void.

7. Ambiguity exists in the statute (Art. 41a) in that unlicensed accountants are not prohibited from practicing accounting, yet are restricted from calling themselves accountants. This ambiguity must be resolved in favor of unlicensed practitioners in order to make the statute intelligible by reading into the law the legislative intent which is to prohibit the use of the word 'accountant' only when the word is used in a misleading manner by unlicensed practitioners."

A statute is presumptively valid and will not be declared unconstitutional unless it is expressly or by necessary implication in conflict with some constitutional provision, and one claiming that the same is unconstitutional must point out to the court the constitutional principle violated. 12 Tex.Jur.2d Constitutional Law, § 34. "The courts should be reluctant to strike down a statute as unconstitutional unless and only when it is absolutely necessary on the facts or circumstances presented by the particular case". Vernon v. State, 406 S.W.2d 236, 242 (Tex.Civ.App.

—Corpus Christi 1966, writ ref'd n. r. e.). If a statute is capable of two constructions, one of which sustains its validity, and the other renders it unconstitutional, the courts will give it that interpretation which sustains its validity. McCarty v. James, 453 S.W.2d 220 (Tex.Civ.App.—Austin 1970, writ ref'd n. r. e.).

■ We adhere to the time honored rule that an act will not be declared unconstitutional on the grounds that it is harsh, unwise, inexpedient, or impolitic. 12 Tex. Jur.2d, Constitutional Law, § 40. Whether a statute is wise or not is not for us to say. The answer to that inquiry must come from the legislature, not the courts. Our concern in this case is with the power of the legislature, not with its wisdom. Helvering v. Davis, 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937).

■■ In Railroad Commission of Texas v. Miller, 434 S.W.2d 670, 673 (Tex. Sup.1968), it was held:

". . . A state may classify its citizens into reasonable classes and apply different laws, or its laws differently, to the classes without violating the equal protection clause of the Fourteenth Amendment . . . The test is whether there is any basis for the classification which could have seemed reasonable to the Legislature . . . A classification is reasonable if it is based on a real and substantial difference having relationship to the subject of the particular enactment and operates equally on all within the same class. . . ."

Where the state may validly require a license, it may make such classifications, restrictions, prohibitions or exemptions as deemed necessary, so long as they do not violate constitutional guarantees and prohibitions. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896 (1937). "The mere fact that discrimination is made does not necessarily vitiate the classification, and unless there is no substantial basis for the discrimination, there is no warrant for judicial inter-

ference . . . All that is required is that the enactment shall be applicable to all persons alike under the same circumstances". Dodgen v. Depuglio, 146 Tex. 538, 209 S.W.2d 588, 594 (1948). If there could exist a state of facts justifying the classification, restriction or prohibition complained of, the courts will assume that it existed. Reed v. City of Waco, 223 S. W.2d 247 (Tex.Civ.App.—Waco 1949, writ ref'd).

■ It is well settled that accounting is a highly skilled and technical profession that affects the public welfare, and which the state, in the exercise of its police power, may regulate. Henry v. State, 97 Tex. Crim. 67, 260 S.W. 190 (1924); 70 A.L.R. 2d 435-437; 1 Am.Jur.2d, Accountants, § 2. Statutes which prohibit anyone from holding himself out as a "public accountant" or a "certified accountant" without having actually received a certificate or permit to practice public accountancy have generally been upheld. See Tom Welch Accounting Service v. Walby, 29 Wis.2d 123, 138 N. W.2d 139 (1965); Davis v. Allen, 43 Tenn.App. 278, 307 S.W.2d 800 (1957); 70 A.L.R.2d pp. 435-437. For the most part, those states which have held such statutes unconstitutional did so for the reasons originally announced in State ex rel. Short v. Riedell, 109 Okl. 35, 233 P. 684 (1924). However, the developments during the fifty years that have passed since that decision have put an entirely new face on the matter. As the affairs of the people change and progress, the police power progresses to meet the needs. State Board of Reg. for Pro. Eng. v. Wichita Eng. Co., 504 S.W. 2d 606 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n. r. e.) and the cases therein cited. Today, the need to protect the public against fraud, deception as the consequences of ignorance or incompetence in the practice of most professions makes regulation necessary. The state may exact the requisite degree of skill and learning in professions which affect the public, or at least a substantial portion of the public, such as the practice of law, medicine, engi-

neering, dentistry, and many others. The Act before us recognizes public accountancy as one of such professions. Public accountancy now embraces many intricate and technical matters dealing with many kinds of tax laws, unfair trade practices, rate regulations, stock exchange regulations, reports required by many governmental agencies, financial statements and the like. So, in this view of the practice of public accounting, the public welfare of this State demands that it be regulated, as is done by Article 41a, V.A.C.S., as amended.

Section 8 of the original Public Accountancy Act of 1945 (Article 41a, V.A.C.S.) prohibited the practice of public accountancy in this State unless such practitioner was the holder of a permit to "practice public accountancy". In 1961, Section 8 was amended and the broad prohibition was omitted, and, as amended, prohibited the doing of certain specified acts, which are set out in detail in Sections (a) to (h) thereof. Section 8(c) clearly provides that no person shall indicate to the public that he is a public accountant unless he holds a live permit to practice public accountancy under Section 9 of the Act. Of particular importance to this case is Section 8(e), which reads, in part, as follows:

". . . provided, however, that only a person holding a live permit issued under Section 9 of this Act . . . may hold himself out to the public as an 'accountant' . . . ."

Admittedly, appellee did not hold such a "live permit".

The State Board of Public Accountancy is an agency of the State and is charged with the duty and responsibility of insuring compliance with the Act and enforcement of its provisions. Section 24(a) of the Act provides, in part:

"Whenever in the judgment of the Board any person who is not the holder of a valid and existing permit to practice public accountancy in this state has en-gaged in any act or practices which constitute the practice of public accountancy within this state, the Board may apply to the District Court of the county in which such person resides or has an office, for an injunction enjoining such person from engaging in the practice of public accountancy, . . . ."

The legislature, in effect, has determined that the public use of the term "accountant" is a holding out to the public that the person using that term holds a live permit to practice public accounting. This Court recognized the validity of similar legislation in Tackett v. State Board of Registration for Professional Engineers, 466 S.W. 2d 332 (Tex.Civ.App.—Corpus Christi 1971, n. w. h.). In upholding an injunction against the public use of the word "Engineering" by a person who was not licensed under the Texas Engineering Practice Act, this Court held:

". . . Since the Act prohibits the use of the term 'Engineering' unless the person is duly licensed under the Act, such prohibited use of this term is a holding out to the public that the business is being operated by a duly licensed and registered engineer."

The same rule applies to an accountant who is engaged in the practice of public accounting but does not hold the necessary permit.

The trial court's findings of fact are devoted in a large measure to factual determinations of reasons why unlicensed accountants should be permitted to do precisely what the legislature said they could not do. The effect of those findings is to substitute the court's judgment for that of the legislature with respect to what is or is not in the best interest of the public, and for what requirements should or should not be imposed on the practice of public accountancy.

We hold that the Public Accountancy Act of 1945, as amended, is constitutional. It, as applied to appellee, does

not amount to an unwarranted regulation of private business and the right of a citizen to pursue an ordinary occupation. It does not abridge rights of private property and does not infringe upon rights of contract in matters of purely private concern bearing no perceptible relation to the public welfare. It is not unreasonable, arbitrary, vague or ambiguous. It does not deny appellee equal protection of the law, nor does it violate any guarantees to appellee under the Bill of Rights, nor does it benefit only a single class, licensed accountants, at the expense of unlicensed accountants and the public as a whole. Every licensing act creates a hardship on those who do not meet its requirements and works to the benefit of those who do, and every licensing act involves a legislative determination that there is or is not a public need for unlicensed practitioners in the profession that is being regulated. The decision by the legislature should not be disturbed unless it is patently violative of constitutional prohibitions and guarantees, or is so ambiguous or vague to the extent that a potential actor cannot determine the point at which his lawful conduct becomes proscribed conduct. That is not the case here.

■■■ The Act's prohibitions bear a reasonable relationship to the expressed purpose to be accomplished by the Act, to-wit: "the regulation and licensing of persons to practice public accounting in this state", as stated in the caption of the 1961 amendment. Clearly, it was the intention of the legislature to protect the public by regulating the practice of public accounting in this State through the issuance of permits and licenses to only those who, in the judgment of the legislature, are qualified to engage in such practice. The Act, as now amended, sets forth certain educational and training standards for the obtaining of a permit to practice public accountancy, which operate equally on all within the same class. That such standards are reasonable and legitimate bases for classifying persons who would engage in the practice

of public accountancy is not open to question.

An accountant has been defined as one who is skilled in keeping or adjusting accounts and is competent to design and control systems of account. Black's Law Dictionary, 4th Edition, 1951. A public accountant is defined in 1 C.J.S., Accountant, p. 636, thusly:

"One engaged in rendering accounting or auditing service, as distinguished from bookkeeping, on a fee basis, per diem or otherwise, for more than one employer but generally not possessing all the qualifications of education or experience required of a certified public accountant; one who offers his services professionally [as an accountant] for pay to the general public."

■■■ Appellee, by offering and furnishing accounting services for pay to the general public was engaged as an accountant in the practice of public accounting. The use of the word "accountants" by appellee on his office signs and business envelopes constituted a holding out to the public that he was an "accountant", which, under the undisputed facts before us, was in violation of Section 8(e) of the Act. The State Board of Public Accountancy is entitled to the injunctive relief sought by it.

Appellee relies upon Florida Accountants Association v. Dandelake, 98 So.2d 323 (Fla.Sup.1957) for an affirmance of the trial court's judgment. There, the defendants were unlicensed accountants who used the word "accountants" on their stationery and office signs. The Florida Statute prohibited the practice of the profession of accounting by unlicensed accountants, and limited the practice of public accounting to those persons who held certificates from the State Board as "certified public accountants" and "public accountants". The statute was struck down as being unconstitutional, and the court held that so long as a person does not use the statutory title "certified public accountant" or "public ac-

countant" or any other designation that might mislead or deceive the public, such person has every right to work at his chosen profession and to call himself an "accountant". We are of the opinion that the reasons of business and economic expediency discussed in the majority opinion in that case are not valid grounds for holding a statute, such as the Texas Statute on the subject, to be unconstitutional. We decline to follow the reasoning, logic or rule expressed in the Dandelake case. We, like the dissent in that case, believe that the majority opinion "invades the legislative field".

The Texas Statute, as we construe it, does not prohibit an unlicensed accountant from practicing accountancy or doing accounting work. We hold that it only prohibits an unlicensed accountant who practices *public* accounting from holding himself out to the public as an *accountant*. Accordingly, the judgment of the trial court is reversed, and judgment is here rendered that appellee be and he is hereby enjoined from using the word "accountant" on his office signs and business envelopes until he has complied with the applicable provisions of Article 41a, V.A.C.S.

Reversed and rendered.

## OPINION ON MOTION FOR REHEARING

The question arises as to whether we can consider appellee's motion for rehearing, which was received by the Clerk of this Court on Monday, October 7, 1974. The motion was sent by mail in a properly addressed and stamped envelope which shows that it was postmarked in McAllen, Texas, on October 4, 1974. The decision of this Court was rendered on September 19, 1974.

Rule 458, Texas Rules of Civil Procedure, requires that in any matter determined by the Court of Civil Appeals, the motion for rehearing shall be filed within 15 days after the date of rendition of the judgment or decision of the Court. Rule 5, T.R.C.P., however, permits the timely filing of any matter relating to an appeal when it is received by the clerk not more than 10 days tardily if sent by mail bearing a postmark which shows that it was mailed at least one day before the last day for filing. Rule 5 further provides that the ". . . postmark . . . shall be conclusive evidence of the date of mailing."

Under the aforesaid rules, the last day for filing the motion for rehearing was Friday, October 4, 1974, and the last day for mailing was October 3, 1974. Appellee, when advised of the situation, filed affidavits in this Court from: Randall P. Crane, an attorney in the law firm that represents appellee; Ruth Moreno, a secretary who is employed by the law firm; George Finch, who was the Postmaster at San Benito, Texas, on October 2, 1974; and C. T. Miller, who was the Postmaster at McAllen, Texas, on October 2, 1974. The facts set out in those affidavits relating to the matter at hand are: 1) The law firm which represents appellee maintains an office in San Benito, Texas; 2) Ruth Moreno personally placed the motion in an envelope, addressed and stamped the envelope, and deposited the envelope in the slot marked "Out of Town" mail in the United States Post Office, San Benito, Texas, before 5 o'clock p. m., October 2, 1974; 3) mail deposited in the San Benito Post Office is sent without postmark to the Post Office at McAllen, Texas; mail so deposited before 5 o'clock p. m. should be postmarked in McAllen on the same day, but it is possible for a letter mailed at the San Benito Post Office before 5 o'clock p. m. on October 2, 1974 to have been postmarked at some later date; and, 4) the truck which transported mail from the San Benito Post Office to the McAllen Post Office on the day of October 3, 1974 experienced mechanical difficulties and arrived some 5 hours behind schedule, which could account for the October 4, 1974 postmark.

We find as a fact that the envelope which contained the motion for rehearing

was actually deposited in the United States Mails on October 2, 1974. Under the circumstances, we do not consider the language in Rule 5 to the effect that the postmark shall be conclusive evidence of the date of mailing is controlling in this instance. We recognize the fact that the mails, since the original adoption of Rule 5 and the several amendments thereto, have become increasingly erratic and undependable.

The motion is deemed timely filed.

We have carefully considered appellee's motion for rehearing and are convinced that the case has been correctly decided. No new authorities have been cited and no new theory for an affirmance has been advanced. The motion is overruled.