William POE

v.

The CITY OF HUMBLE, TEXAS.

Civ. A. No. H–80–94.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 4, 1983.

Ed Stapleton, Brownsville, Tex., for plaintiff.

John O. Hoyt, Humble, Tex., and Joe Cash, Houston, Tex., for defendant.

### MEMORANDUM AND ORDER:

STERLING, District Judge.

This is a suit for declaratory and injunctive relief against enforcement of a law of the City of Humble, Texas, which the Plaintiff claims abridges his first amendment rights. The suit was tried without a jury and upon conclusion of the presentation of Plaintiff's evidence the Court found that he was without standing to question the validity of the enactment which appeared to be constitutional in any event. This memorandum presents the findings of fact and conclusions of law reached by the Court. Rule 52(a), Fed.R.Civ.P.

*Factual Setting*

On October 2, 1979, Plaintiff visited Humble. This visit was his first and last appearance in town. At that time he inquired of the City Secretary concerning the prerequisites necessary to obtain a permit to solicit funds for his religion, the Unification Church. Although it is clear that he did not receive such a permit it is not clear what efforts, if any, he made to secure one. Three months after the incident Plaintiff filed suit in this Court to overturn, on constitutional grounds, the then current "peddlers" ordinance (Px. 1).

In March, 1980, the City repealed the peddlers ordinance and replaced it with two enactments. One dealt with non-religious solicitation (Px. 2) and the other, Ordinance 298 (Px. 3), dealt with solicitation for religious purposes. Later, in July, Plaintiff amended his complaint to request declaratory and injunctive relief against enforcement of only the latter enactment. No other event of significance occurred in this matter during the more than two-year period between the filing of the amended complaint and the date of trial.

*Standing*

The first issue to be considered is whether Plaintiff has standing to bring the first amendment claims he alleges. In *Duke Power Co. v. Carolina Environmental Study Group,* 438 U.S. 59, 72, 98 S.Ct. 2620, 2629, 57 L.Ed.2d 595 (1978), the Supreme Court summarized the law of standing in the following manner:

"The essence of the ... inquiry is whether the parties seeking to invoke the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." (Citing *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962)).

A personal stake in the outcome of the controversy has usually been assured in first amendment cases by the fact that criminal proceedings have been previously instigated against the Plaintiff. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana,* 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Kunz v. New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951).

■ But a plaintiff is not required to expose himself to actual arrest or prosecution before challenging the constitutionality of a statute. *Steffel v. Thompson,* 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974). Plaintiff still must show, however, that the "alleged threats of prosecution . . . cannot be characterized as 'imaginary or speculative' . . . [or] 'chimerical.'" [citations omitted] *Id.*

■ Personal stake also, of course, includes the obligation that each and every plaintiff in a lawsuit show that he meets the requirements of standing on his own. *See Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (three of four plaintiffs dismissed because only one had standing to contest the constitutionality of a state statute).

■ Finally, although in the first amendment area a plaintiff may assert the rights of others who may suffer under an overbroad statute, he must first establish that he is personally involved in a "case or controversy." *Village of Schaumberg v. Citizens for a Better Environment,* 444 U.S. 620, 634, 100 S.Ct. 826, 834, 63 L.Ed.2d 73 (1980). As explained in *Bigelow v. Virginia,* 421 U.S. 809, 816, 95 S.Ct. 2222, 2229, 44 L.Ed.2d 600 (1975), "[t]here must be a 'claim of specific present objective harm or a threat of specific future harm.'" Again the test is the plaintiff's "personal stake in the outcome of the controversy." *Id.* at 817, 95 S.Ct. at 2230 (citing *Baker v. Carr, supra* ). The dispute between the *parties* must be "definite and concrete, not hypothetical or abstract." [citations omitted]. *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979).

Under the standards described above it appears that Mr. Poe does not have standing to present the instant challenge, *i.e.,* he has not presented a justiciable case or controversy under Article III of the Constitution. Plaintiff has not sued in a representative capacity and, accordingly, must establish an individual personal stake in this matter such that a concrete adverseness between himself and the Defendant is assured.

■ Plaintiff's obligation to prove standing is defeated by three independently sufficient and cumulative hurdles. First, he failed to prove that he ever made a good faith effort to secure a permit from the City and that a reasonable request by him for a permit was denied. Plaintiff testified that he did not receive a permit during his visit to the town, although he requested one from the City Secretary (R. 7). Later in his testimony, however, he declined directly to affirm that he asked for a permit (R. 18). Ms. Fields contradicted Plaintiff's claim stating that she did not refuse him solicitation rights (R. 35), that she knew of "no one ever having been refused a permit" (R. 35), and that religious organizations were "exempt" from regulation because "anyone is able to come in and get a permit" (R. 36). Plaintiff substantially corroborated Fields' testimony on the exemption issue by testifying that he did not feel the "peddlers" ordinance was applicable to him (R. 23).

After resolving the testimony of the two witnesses to the extent possible, the Court concludes that the remaining discrepancies can only be reconciled by finding that Plaintiff did not make a good faith effort to obtain a permit. At trial Plaintiff admitted to many failures of memory (R. 7, 15–16, 18–21, 23, 25–26). Apparently, he had trouble distinguishing his solicitation activities in other towns (R. 16). He was not sure what the Secretary required of an applicant before issuing a permit (R. 7, 18), although he did mention a bond requirement found in an ordinance which, importantly, both he and Fields agreed was inapplicable.

■ The Court finds this testimony to be self-serving and inconsistent. Poe never specifically identified why he did not receive a permit. He did state, however, that there were "certain things to get a license which I felt I didn't want to comply with" (R. 7), and "I didn't feel I should" (R. 23). The Court is left to speculate why he did not receive a permit. It is entirely possible this failure occurred because he would not give his name or address or other reason-

ably required information. Plaintiff has failed to present his constitutional claim in a concrete factual setting which is an essential requirement in the determination of such an important question. *Duke Power Co. v. Carolina Environmental Study Group, Inc., supra.* A municipality may constitutionally impose some informational registration requirements upon a person who desires to solicit for religious purposes. *Cantwell v. Connecticut,* 310 U.S. 296, 306, 60 S.Ct. 900, 904, 84 L.Ed. 1213 (1940); *International Society for Krishna Consciousness, Inc. v. City of Houston,* 689 F.2d 541 (5th Cir.1982).

The testimony of Fields contrasted sharply with Poe's. The former remembered the subject incident well and testified without qualification. The Court finds her testimony to be credible, and accordingly, finds that solicitation permits for religious activity were readily available in Humble, but that Plaintiff failed to obtain one because he did not make reasonable application. It is clear beyond doubt that Plaintiff did not prove by a preponderance of credible evidence that a contrary situation existed.

■ Plaintiff failed to show that the injury of which he complains can be "fairly . . . traced to the challenged action of the defendant" rather than his own actions or inaction. He is without standing. *Duke Power Co. v. Carolina Environmental Study Group, Inc., supra,* 438 U.S. at 74, 98 S.Ct. at 2630. Plaintiff totally failed to prove the allegations of his complaint concerning threats of arrest.[1] *See* R. 19, 21. Since he did not prove that he was arrested, threatened with arrest or other harm, or that he was denied a permit, he has failed to allege a personal stake in a concrete dispute. This suit should be dismissed because of the speculative nature of the claimed injury. *Younger v. Harris, supra,* 401 U.S. at 41–42, 91 S.Ct. at 749.

■ The Court rejects the proposition that he may gain standing by alleging, without more, that the simple existence of the statute abridges his desired exercise of first amendment rights. Plaintiff alleged that he or members of his church had been threatened with arrest and prosecution if they solicited in Humble. The Court found above, however, that he totally failed to prove these allegations beyond the agreed fact that permits were required before any person could solicit in town. Even in a religious context, state imposed registration and permit requirements are not unconstitutional *per se. Cantwell v. Connecticut, supra; International Society for Krishna Consciousness v. City of Houston, supra.* Because Plaintiff failed to prove "that . . . [his] prosecution is likely," he is not a "proper party" to a case such as this. *Younger v. Harris, supra,* 401 U.S. at 42, 91 S.Ct. at 749.

In *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the Court held that the plaintiff union (UFW) could challenge three provisions of Arizona law because their mere existence arguably caused nonspeculative injury. But that case is distinguishable. The first constitutional attack which was heard by the Court in *Babbitt* questioned the validity of an enactment which established stringent election procedures for any entity that wished to represent farm workers in the State. The plaintiff there represented that it had refused to exhaust those procedures only because it could never qualify for representation due to statutory restrictions, in other words, invocation of the election procedures would be "futile." UFW also "adduced evidence tending to prove that the statutory election procedures frustrate . . . democratic selection of bargaining representatives." *Id.* at 300, 99 S.Ct. at 2309. UFW claimed "that agricultural workers are constitutionally entitled to select representatives to bargain with their employers." *Id.* at 299, 99 S.Ct. at 2309. The Court held that, "in view of the nature of . . . [the] claim", UFW had standing to challenge the election provision.

1. It is the duty of the Court to determine the truth of a plaintiff's factual allegations which arguably support a claim of standing. *Younger v. Harris, supra,* 401 U.S. at 42, 91 S.Ct. at 749.

This was an eminently reasonable holding because if there was a constitutional right of representation as alleged, it was being abridged by the existence of the statute. Utilization of the statutory procedures was not a necessary prerequisite to standing because plaintiff alleged and proved that such a step would be futile and would only continue the allegedly "unconstitutional" damage.

Mr. Poe, however, did not allege and prove that application for a permit would have been futile or that the Ordinance served to abridge his alleged first amendment rights. On the contrary, the evidence adduced at trial showed that claimed infringement of the right to solicit was wholly speculative. If he had applied, he may well have received a permit. The only evidence presented by Plaintiff on this issue concerned the policy in Humble before the present Ordinance was adopted. This Court has found that at that time the City did issue permits to religious solicitors after reasonable application.

The second constitutional claim allowed in *Babbitt* involved Arizona's ban on advertising which included a criminal penalty for its violation. The Court again analyzed the standing issue in light of the nature of the claim. UFW claimed, and the Court agreed (*Id.* at 301, 99 S.Ct. at 2310), that the prevention of self-censorship resulting from fear of possible punishment was a recognized and protected constitutional interest. Citing *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Accordingly, the simple existence of the statute caused UFW arguable damage to a protected interest. But in the instant situation the simple licensing requirement does not injure a constitutional interest of the Plaintiff. *Cantwell v. Connecticut, supra.* Poe showed that he is required by Defendant to secure a permit before he may solicit, but that is not enough since he failed to show that the City Ordinance presented anything more than a theoretical,[2] speculative, and unrealized possibility of damage to a protected first amendment right. *Younger v. Harris, supra.*

The second hurdle barring Plaintiff's claim of standing is the uncontroverted fact that he has never attempted to get a permit under the Ordinance he is now challenging. Since he has suffered no harm as a result of any actions taken pursuant to Ordinance 298, his suit involves an entirely imaginary or speculative claim of damage, under an untested statute, *Younger v. Harris, supra,* in an "abstract" and "advisory" setting, *Babbitt v. United Farm Workers National Union, supra,* 442 U.S. at 297, 305, 99 S.Ct. at 2312. The Plaintiff is asking the Court to suppose that the past policies of the City, whatever they in fact were, are unchanged despite the adoption of a new Ordinance. For these reasons also there is no standing. The preceding conclusion is applicable even if it is determined that the Court's factual finding determining the ready availability of religious solicitation permits in Humble is clearly erroneous.

The requirement that there be a "continuing ... live and acute controversy," *Steffel v. Thompson, supra,* 415 U.S. at 459, 94 S.Ct. at 1215, forms the third obstacle to Plaintiff's claim. In addition to the facts that he has never been threatened with punishment for solicitation in Humble, and has not even been present in the town at a time when the challenged Ordinance was on the books, Plaintiff admittedly has never attempted to solicit in Humble at any time (R. 20), and probably never will. Although he began his testimony by saying that his "residence" was in South Lake, Texas (R. 4), his later testimony described his association with that town in the past tense, stating, "[t]hat was my residence" (R. 11). He now works "out of" New York (R. 4) and holds a new position in his church with corresponding nationwide responsibilities (R. 32).

Even if it is assumed that he does actually "reside" in South Lake, that town is located between Dallas and Fort Worth and is over 250 miles from Humble. Of course, because he works in New York it is unlikely

<hr>

**2.** See discussion of the constitutionality of the Ordinance, *infra.*

that he could be present in South Lake very often. Ms. Fields testified that she has not seen Plaintiff in Humble since the October 2, 1979, incident. The record does not reflect that he has ever been in town before or since that date and the Court finds that he has not. Similarly, the record shows that Plaintiff's fellow church members have not appeared in Humble since 1979 (R. 8). Plaintiff appears to have no active interest in anything that occurs in Humble, Texas. The Court concludes that he has not presented a continuing, live and acute controversy, but has attempted to obtain an "advisory" opinion, *Babbitt, supra,* in a "test case" setting.

This situation is clearly distinguishable from the one which existed in *Heffron v. International Society for Krishna Consciousness, Inc.,* 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), a case cited by Plaintiff. There the Supreme Court permitted a challenge to a rule prohibiting crowd solicitation during a state fair. The challengers of the rule had filed suit the day before the opening of the fair requesting, *inter alia,* an injunction enjoining their arrest while soliciting contributions from fair visitors. The defendant state officials sought to uphold the prohibition on crowd solicitation, but the plaintiffs obtained several temporary court orders and in fact solicited at the fair. *Id.* at 645, 101 S.Ct. at 2562. A short while later, after the fair had concluded, the district court held a hearing on defendant's motion for summary judgment and upheld the validity of the rule in question. Contrary to the instant facts, it was clear in *Heffron* at the trial court level that there was a day-to-day, live, on-going dispute which acutely concerned both sides. That fact situation also differs significantly from this one because the Defendant here does not desire to prevent solicitation as did those defendants. Humble seeks only to uphold its statute and to impose a reasonable permit registration requirement.

In summary, the Court concludes that Plaintiff has not shown himself to have standing because he has failed to prove that he made a reasonable application for a solicitation permit, that he made any application

whatsoever under the existing Ordinance, nor shown that a continuing, live and acute controversy exists.

*Constitutionality*

The Court will consider the merits of Plaintiff's constitutional claims as an alternative basis for its holding. Plaintiff's pleadings and arguments have progressively implicated additional provisions of Ordinance 298. In total Plaintiff has launched a full-scale, broadside attack on nearly every provision of the enactment.

■ Before discussing this attack it is worthwhile to delineate some analytical boundaries. First, this is a purely facial challenge. Plaintiff has never sought to utilize Ordinance 298. He cannot argue that it is unconstitutional as applied to him because it has never been applied. Second, the "[f]acial overbreadth [doctrine] has not been invoked [successfully] when a limiting construction has been or could be placed on the challenged statute." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Since Plaintiff failed to allege and prove any actual or practical interpretation or construction of the Ordinance by the City of Humble, the Court will apply general rules of construction which are followed by the state courts of Texas in interpreting statutory language.

■ Duly enacted laws are presumed to be constitutional. *Smith v. Decker,* 158 Tex. 416, 312 S.W.2d 632 (1958); *Texas State Board of Public Accountancy v. Fulcher,* 515 S.W.2d 950 (Tex.Civ.App.— Corpus Christi 1974, writ ref'd n.r.e.). "Doubts as to . . . [a law's] constitutionality should always be resolved in favor of constitutionality." *Smith v. Decker, supra.* A "statute will not be interpreted in such manner as to render it unconstitutional if by any reasonable construction it may be held constitutional." *McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691 (1955); *Texas State Board of Public Accountancy v. Fulcher, supra.*

These Texas rules of construction are, of course, critical in determining the meaning of a Texas law. The principles followed by the federal courts are similar. On one occasion the Supreme Court found a lower court's statutory construction assumptively "successful" even though it involved a "remarkable job of plastic surgery upon the face of the ordinance." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 153–55, 89 S.Ct. 935, 940, 22 L.Ed.2d 162 (1969). Even a "strained" interpretation by a federal court of the language of a state enactment is not necessarily unreasonable. *Universal Amusement Co. v. Vance,* 587 F.2d 159, 166 (5th Cir.1978) (en banc), *aff'd,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980). With these principles in mind each facial challenge to the particular provisions of Ordinance 298 will be addressed in turn.

In his initial challenge, Plaintiff reads section 2 as a prohibition of solicitation by the city in any area of the city where a sign or sticker is posted by the owner of private property. This reading of the language in question is much too broad. It is clear that the section is meant only to recognize the right of private property owners to control the use of their property. Since this section is the functional equivalent of a trespass statute it is an accurate reflection of the law of the land. *Hudgens v. National Labor Relations Board,* 424 U.S. 507, 520–21, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976); *Martin v. City of Struthers,* 319 U.S. 141, 148, 151, 63 S.Ct. 862, 867, 87 L.Ed. 1313 (1943). Section 2 is not unconstitutional on its face.

Plaintiff finds section 4, which proscribes "false or fraudulent" statements by solicitors, to be objectionable, but his objections appear to be unfounded. "Fraudulent misrepresentations can be prohibited and the penal laws used to punish such conduct directly." *Village of Schaumburg v. Citizens for a Better Environment,* 444 U.S. 620, 637, 100 S.Ct. 826, 836, 63 L.Ed.2d 73 (1980). Presumably, the word "false" as used in the section means knowingly "false or with reckless disregard of whether it was false or not." Government regulation of such speech is not foreclosed by the first amendment. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 725, 11 L.Ed.2d 686 (1964).

Plaintiff next challenges Section 5 as an unreasonable restriction on speech. Of course, reasonable restrictions on the time, place, and manner of exercise of first amendment rights are permissible. *See, e.g., Heffron v. International Society for Krishna Consciousness, Inc., supra.* The subject time restrictions do not appear to be unreasonable. Initially it must be noted that the section imposes no restrictions whatsoever on religious activities directed to willing listeners. *Cf. Heffron, supra,* at 655, 101 S.Ct. at 2567; *Kovacs v. Cooper,* 336 U.S. 77, 86–87, 69 S.Ct. 448, 453, 93 L.Ed. 513 (1949); *Martin v. City of Struthers, supra.* The regulation permits solicitation at any time if pursued by "invitation." The last term is not defined and presumably includes implied, spontaneous invitation by a listener in addition to advance invitation. Thus, the section restricts solicitation only of unwilling listeners during the hours of darkness and the hours immediately following sunrise when few people may be about. The three cases cited above indicate that solicitation of unwilling prospects may be punished by government. Section 5, therefore, is not unconstitutional.

Plaintiff complains of sections 6–11 which establish the basic license requirement. The Court's discussion of section 4 is fully appicable to section 10, which is a similar provision, and for the same reasons the latter section is not facially invalid. Sections 6–9 are permissible procedural devices designed to comply with the Supreme Court's interpretation of the first amendment.

Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent.

*Cantwell, supra,* 310 U.S. at 306, 60 S.Ct. at 904. Given Plaintiff's testimony at trial

there appears to be no reason why he could not have signed and submitted in his own name the affidavit required by section 7. All of the foregoing procedures are reasonable and constitutional.

■ The main thrust of Plaintiff's constitutional attack centers on section 11. Plaintiff reads the section as specifying the procedures for the actual physical issuance of the permit. The Court reads the same section as designating the procedures for issuance of the permit with the concurrence of the City or conversely the procedures for formulating the City's opposition to issuance of the permit. Section 11(a) states that objections "to the issuance of a license as *provided for* in Section 6" [emphasis added] will be in writing. Accordingly, the Court concludes that section 6 and not 11 *provides* for issuance of a permit. Section 6 states that licenses will be "obtained" from the City Clerk. Section 6 does not allocate discretionary power to the Clerk to issue or refuse to issue permits and, consequently, the Court concludes there is none.

The fact that the two sections are directed to different City officials further supports the interpretation that the sections are devoted to different procedures. Section 6 directs the City Clerk to issue permits promptly as a ministerial act upon presentation of completed applications. Section 11 describes the procedures which the City Manager and Council are to employ to develop the City's formal position with respect to the completed "issuance of a license as provided for in Section 6." Presumably, the City would file suit to enjoin solicitation if it determined that it was opposed to the prior issuance of the permit. On the other hand a permit applicant could, without going to Court, use the Section 11 procedures to convince the City to accept his continued solicitation. Because Texas laws are presumed to be constitutional and are construed accordingly, *Texas State Board of Public Accountancy v. Fulcher, supra,* no other interpretation of the Ordinance is possible. *See Teitel Film Corp. v. Cusak,* 390 U.S. 139, 88 S.Ct. 754, 19 L.Ed.2d 966 (1968) (a city must within a "brief period, either issue a license or go to court to restrain" the contested activity).

Section 11(c) directs the City Clerk to "stay the issuance of any license as herein provided." However, as noted above, Section 6 provides for physical issuance of the permit as a matter of course following application for the same. Therefore, the stay provision along with the rest of section 11 appears to be concerned only with development of the City's position with reference to the permit. It is not a revocation of the permit. The "stay" effectively serves as a notice of appeal, informing the applicant that the City Council will review his permit and formulate the City's "final" position on "all matters determined herein." *See* Section 11(d).

■ Plaintiff's next challenge concerns an inconsistency he perceives in sections 14 and 15. This perceived problem, however, lacks substance. Clearly, a demanded, temporary display of a permit in compliance with section 14 does not constitute advertising under section 15.

■ Finally, section 16 is not unconstitutional on its face. The section states only that a permit "shall be subject to suspension or revocation" if the holder violates the law. First, the language "shall be subject to" does not mandate suspension or revocation. The phrase can be read simply as a warning that a permit holder exposes himself to the risk of suspension or revocation if he violates the law. Second, the Court cannot say that one who makes a practice of, for instance, defrauding citizens after first approaching them as a solicitor could not "be [constitutionally] subject to . . . revocation" of his permit. As a third point it should be noted that this provision simply encourages permit holders to obey the law. Surely such encouragement does not violate the Constitution of the United States. In short, although some application of the section could theoretically abridge constitutional rights, it, like the rest of the Ordinance, is not invalid on its face. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

*Ripeness*

■ The Court earlier found that Plaintiff was without standing. Even if that conclusion is incorrect, it seems clear that this "case" is not ripe for determination at this time, and should not be heard. *Cf. Duke Power Co. v. Carolina Environmental Study Group, Inc., supra,* 438 U.S. at 81, 98 S.Ct. at 2634. Plaintiff has not presented a live case or controversy. He did not apply for a permit in good faith, he has never solicited in Humble or expressed an interest in securing a permit while Ordinance 298 was in effect, and, if objective facts can ever indicate subjective intent, it is clear that he has no present intention of returning to Humble. An actual application for a permit under Ordinance 298 would greatly assist a court in interpreting the constitutionality of this Ordinance. *Id.* Its language is not totally without ambiguity. Delay of this litigation until an appropriate time for decision would not, as a practical matter, harm Plaintiff in view of the fact that he has not been in Humble in approximately three years. *Id.* Dismissal for lack of ripeness is appropriate.

*Abstention*

■ The preceding discussion of the constitutionality of the Ordinance illustrates the fact that in many of its provisions it is subject to more than one interpretation or construction. In several instances one plausible interpretation of the language would present a serious constitutional issue and another would obviate the question on state law grounds. This feature makes this litigation a "paradigm" for application of the abstention doctrine. *Babbitt v. United Farm Workers National Union, supra* 442 U.S. at 306, 99 S.Ct. at 2312. The Ordinance has never.been scrutinized by a state court and its meaning in several particulars is not certain. *Id.* For these reasons the Court is of the opinion that if Plaintiff does have standing it is appropriate as a first alternative to abstain from ruling on the constitutionality of the Ordinance so that a state court can definitively interpret it. Under this alternative, dismissal without

prejudice is required. *See Palmer v. Jackson,* 617 F.2d 424, 431 (5th Cir.1980).

In conclusion, the Court finds that Plaintiff is without standing and has failed to show that this litigation is ripe for determination at this time. Accordingly, the cause should be dismissed. Alternatively, if there is standing, the Court concludes that abstention and dismissal without prejudice is proper. In the second alternative the Court is of the opinion that Plaintiff has failed to prove that the Ordinance in question is unconstitutional. Accordingly, if there is standing, ripeness and no reason for abstention, then the case should be dismissed on the merits.

It is therefore ORDERED that this case be, and it is hereby DISMISSED.