H. D. DODGEN, EXECUTIVE SECRETARY, GAME, FISH AND OYSTER COMMISSION OF TEXAS ET AL V. VINCENT DEPUGLIO.

No. A-1340. Decided March 10, 1948.
Rehearing overruled April 7, 1948.
(209 S. W., 2d Series, 588.)

*Price Daniel*, Attorney General, *Fagan Dickson, Charles E. Pratt,* and *David Wuntch,* Assistants Attorney General, for the appellants.

*Nussbaum, Piperi & Licata* and *Frank Nussbaum,* of Galveston, *Wood & North* and *Allen Wood,* of Corpus Christi *T. J. Vaughan,* of Aransas Pass, *Ashley & Toler, Carlos C. Ashley* and *Harris Toler,* of Austin, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the Court.

This suit was filed under the Texas Uniform Declaratory Judgment Act (Art. 2541-1, V. C. S.) by the appellee, Vincent Depuglio, in May 1947, in the 94th District Court of Nueces County against appellants, H. D. Dodgen, executive secretary Game, Fish & Oyster Commission of Texas, and others (members and employees of the Commission and the Attorney General of the state), seeking to obtain a judgment declaring the provisions of article 934b-1 of the penal code to be unconstitutional and, on the basis of such judicial declaration, to enjoin appellants from interfering with appellee's operation of shrimping boats in the Gulf Coastal waters of the State. The statute thus sought to be nullified because beyond the power of the legislature to enact, is as follows:

"Art. 934b-1. Nonresident commercial fisherman and fishing boats; license; definitions

"Section 1. A 'Non-resident Commercial Fisherman' for the purposes of this Act is hereby defined as follows:

"Any person who is a citizen of any other State, or any person who has not continually been a bona fide inhabitant of this State for a period of time more than twelve (12) months; and the word person shall include partnerships, associations and corporations who have not continually had a bona fide place of business in this State for a period of time more than twelve (12) months, and who takes, assists in taking or catching, fish or shrimp or oysters, or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange.

Non-resident Commercial Fishing Boat

"Sec. 2. A 'Non-resident Commercial Fishing Boat' for the purposes of this Act is hereby defined as follows:

"Any boat or vessel, which is registered in any other State, or which has not continually been registered in this State for a period of time more than twelve (12) months, or which is not owned by any person, partnership, association of persons or corporation which has had a bona fide place of business in this State for a period of time more than twelve (12) months, and which is used for the purpose of taking, or assisting in taking or catching, fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange.

License to Fish Required; Amount of Fee

"Sec. 3. Before any 'Non-resident Commercial Fisherman' shall take or assist in taking any fish or shrimp or oysters or any other edible aquatic life from the tidal salt waters of this State, a license shall first be procured from the Game, Fish & Oyster Commission of Texas, or one of its authorized agents, privileging them so to do.

"The fee for a Non-resident Commercial Fisherman's License shall be Two Hundred Dollars ($200).

### License for Non-resident Commercial Fishing Boat Required; Amount of Fee

"Sec. 4. Before any 'Non-resident Commercial Fishing Boat' shall be used for the purpose of taking or assisting in taking or catching, fish, shrimp, oysters or any other edible aquatic life from the tidal salt waters of this State for pay or for purpose of sale, barter or exchange, a license to be known as 'Non-resident Commercial Fishing Boat License' shall first be procured from the Game, Fish and Oyster Commission of Texas, or one of its authorized agents, privileging them so to do.

"The fee for a Non-resident Commercial Fishing Boat License shall be Two Thousand, Five Hundred Dollars ($2,500)."

It will be observed that the statute sought to be nullified is a conservation statute and that it prescribes a license fee for both non-resident fishermen and *the use of non-resident commercial fishing boats,* as a prerequisite to take shrimp *belonging to* the State (Art. 4026, V. C. S.) from the State's territorial waters; and is also noted that article 4030, V. C. S., one of the articles of the same conservation statute, provides that all funds collected by the Commission from the sale of commercial fishermans' licenses and other sources shall be employed (among other uses) in the better enforcement of the fish and oyster laws of the State, specifying (among the uses of the funds collected) the "purchase, repair and operation of boats and the employment of deputies to carry out and enforce the provisions of the Act," which act recites in its emergency clause that there were then (1925) "no efficient laws for the preservation, and protection of the *fish and other aquatic animal life of the State.*" (Italics ours.)

Appellants filed in the trial court a motion (unnecessary under our view of the case to take further note of) to dissolve

a temporary restraining order granted appellee by the trial court; and filed also pleas to the jurisdiction of the court and in abatement, which the trial court heard along with the hearing on the application for a temporary injunction.

On June 7, 1947, the court rendered judgment overruling (correctly in our opinion) the pleas to the jurisdiction and in abatement and rendered judgment (erroneous in our opinion) holding sections 2, 3 and 4 of article 934b-1 to be unconstitutional, and enjoinoing appellants "from interfering with plaintiff's (appellee's) boats in any manner in connection with the enforcement" of the law held to be unconstitutional.

■ Defendants (appellants here) gave notice of appeal direct to the Supreme Court pursuant to Rule 499a, Texas Rules of Civil Procedure. The procedure prescribed by the rule, and duly followed in perfecting the appeal, was promulgated under an act of the legislature enacted by authority of section 3-b of article 5 of the State constitution, authorizing direct appeals to the Supreme Court from trial in courts in certain cases.

Section (a) of the rule provides that in view of the constitution of the State (confining the appellate jurisdiction of the supreme court to questions of law only) the court has. and will take appellate jurisdiction on direct appeal over questions of law only, and will take such jurisdiction from only a district or county court.

Section (b) provides that "only the constitutionality or unconstitutionality of a statute of this State," may be presented when the same shall have arisen (as in the present case) "by reason of the order of a trial court granting or denying an interlocutory or permanent injunction."

Section (c) provides that such appeal shall be in lieu of an appeal to the court of civil appeals and that if the case involves the determination of any contested issue of fact, the procedure promulgated by the rule shall not apply.

The appeal (the interest of appellants in the subject matter appearing) was duly perfected. The transcript of the proceedings below filed by appellants shows, among other things, the pleadings of the parties, the filing of bonds by plaintiff (appellee) as required by the court; the interlocutory decree appealed from (reciting the overruling of defendants' pleas to the jurisdiction and in abatement, defendants' exceptions,

·the adjudication of the unconstitutionality of the provisions of article 934b-1, supra, particularly sections 2 and 4, and the restraining order against defendants predicated thereon; and defendants' notice of appeal pursuant to rule 499a) and the trial court's conclusions of law on which its adjudication of unconstitutionality and its restraining order against defendants, were predicated.

The facts appear to be that Depuglio is the owner of the fishing boats (acquired March 4, 1947) involved in the appeal and that he has not paid the $2,500.00 license fee fixed by the legislature as above indicated, on any of these boats. No showing was made that these boats (not merely fish boats but commercial fishing boats) are presently registered in any other State and it is undisputed that they have not been continually registered in this State for twelve months, as required by the legislature privileging such boats to be *"used for the purpose of taking * * * shrimp * * ** from the tidal *salt waters of the state."* (Italics ours.) Appellee is now, and has been for many years a resident of the State, and has had a place of business in the State for many years from which he has conducted a seafood business, .consisting in part in the taking of shrimp from the coastal waters of the State. The Game, Fish & Oyster Commission, the requirements of the above statute with respect to commercial fishing not having been met, and it appearing that the boats involved had not been "continually * * * registered in this State for a period of time more than twelve (12) months," sought to require Depuglio to pay the $2,500.00 license fee prescribed by section 4 of the statute. Upon his refusal to pay such fee the Commission sought to prohibit the operation of the boats involved and, among other things, caused to be instituted various criminal prosecutions against him to enforce the prohibition. Depuglio sought to enjoin defendants in their interference with the operation of his boats by the filing and prosecuting of this action, with the results above stated.

Being of opinion that no contested issue of fact is involved and that the remedy sought by Depuglio under the declaratory judgment act was cumulative, we overrule the contention that this court is without jurisdiction to consider the appeal from the question of trial court's interlocutory decree. Railroad Commission of Texas v: Shell Oil Co., 146 Texas 286, 206 S. W. (2d) 235; Cobb v. Harrington, 144 Texas 360, 190 S. W. (2d) 709. We overrule the appellants' motion to dismiss this appeal for want of jurisdiction in the trial court. Cobb v. Harrington, supra; Rogers v. Daniel Oil & Royalty Co., 130 Texas 386, 110

544

S. W. (2d) 891; Sheppard v. Jacksboro Ref. Co., 123 S. W. (2d) 497.

■ Therefore, since the trial court had jurisdiction and the direct appeal to this court was proper under Rule 499a the remaining question for decision, as we view the case, is whether the trial court's conclusion of law that the statute sought to be enforced by appellants is unconstitutional, is correct. We are of opinion that statute in question, in view of the legislative purpose in its enactment, was within the legislature's power. The contention of Depuglio is that sections 2 and 4 are unconstitutional because they discriminate between residents (he being a resident) in the matter of his right to engage in commercial fishing through the use of the boats involved.

Section 2 defines a "Non-Resident Commercial Fishing Boat" as set out above, and section 4 imposes a $2,500.00 license fee (also set out above) on any boat or vessel coming within such definition.

The record does not disclose whether or not the boats involved are presently registered in any other state, but there is no dispute as to their ownership by Depuglio or that he has had a bona fide place of business in the State for more than twelve (12) months, and that it "is used for the purpose of taking, or assisting in taking or catching * * * shrimp * * * from the tidal salt waters of this State for pay or for the purpose of sale, barter or exchange." Since the boats in question are within the purview of these parts of the definition in Section 2, the question is narrowed to whether or not the legislature, in view of the object to be attained, had the power to require a larger license fee for a commercial fishing boat which has not continually been registered in this State for a period of time more than 12 months, than for one which has been so registered.

■ It has been well established since McCready v. Virginia, 94 U. S. 391, 24 L. Ed. 248, that the State, in its sovereign capacity, owns the fish in tidewaters within its jurisdiction. Toomer v. Witsell, 73 F. Supp. 371; 22 Am. Jur. p. 667. The fish in such tidewaters are the property of the State, and no person owns any vested property right in these fish. Stephenson v. Wood, 119 Texas 564, 34 S. W. (2d) 246 (Tex. Com. App.), Article 4026, V. A. C. S. By reason of the State's control over fish within the limits of its territorial waters it has power "to be exercised through the legislature, to regulate the taking

of fish and shrimp from its public waters, and to prohibit from time to time such taking, *in order to conserve those natural resources for the ultimate benefit of all the people."* (Italics ours). Tuttle v. Wood, 35 S. W. (2d) 1061, writ of error refused; 36 C. J. S. p. 857. It is held in the case cited that in passing on the constitutionality of statutes enacted under the police power, as was the statute in question, it must be kept in view that "So long as that power is reasonably exerecised by the legislative authority, no other branch of the government may interfere therewith," and that ordinarily "the necessity or reasonableness of regulation or prohibition * * * is left to the discretion of the Legislature, whose determination thereof, in the exercise of a sound discretion, is conclusive upon the courts."

■ The State legislature, in order to preserve title to fish within the State's boundaries, may, without violating the guaranties of the Federal Constitution, adopt legislation which permits only citizens of the State to take fish within its jurisdiction. Haavik v. Alaska Packers' Ass'n., 263 U. S. 510, 44 Sup Ct. 177, 68 L. Ed. 414; Toomer v. Whitsell, supra. Having the power to exclude non-residents from fishing in the State, the State may grant them the privilege upon conditions different from those it imposes on its residents, for example, the requirement of a higher license fee. Toomer v. Witsell, supra; State v. Starkweather, 214 Minn. 232, 7 N. W. (2d) 747; 22 Am. Jur. p. 694. In Toomer v. Whitsell, the court said:

"The benefit to be derived from these shrimp, produced in the inland waters of the state and constituting a valuable source of food and income for large numbers of its people, will be largely lost if out-of-state fishing boats are allowed to prey upon them without let or hindrance. It is unquestionably within the power of the state, as a proper conservation measure, to require of out-of-state fishermen a license fee so high as to limit their number and to reimburse the people of the state in some measure for the loss sustained by them from the fishing of those who are licensed."

■ The purpose of the statute in question was to conserve shrimp and other fish in the tidewaters of the State for the residents of this State *by limiting the number of out-of-state fishermen.* This statute would afford little protection to the property or interest sought to be conserved and protected if its provisions could be evaded by non-residents. By way of illustration, if the legislature had defined a "Non-Resident Commercial Fshing Boat" merely as one owned by a non-resident, such a

definition could have been so easily evaded that the entire purpose of the statute would have been defeated. One who was not a resident of the State could simply transfer his title to the boats to a resident during the fishing season and thereby evade the payment of the larger license fee required for non-resident boats. To prevent such evasion, the legislature has a large discretion in determining what is necessary to accomplish the purpose of the statute. While the legislature in protecting against evasions of the statute under consideration discriminates against residents of the State operating under circumstances similar to those under which Depuglio was operating, nevertheless such discrimination, when viewed from the standpoint of the interest sought to be protected, is not so unreasonable as to warrant the court in declaring the provisions in question unconstitutional as being in violation of the legislature's authority under its police power. Nor is it so unreasonable and arbitrary as to deny to such residents due process or equal protection of the law. The requirement that the boat must have been continually registered in this State for more than 12 months is merely a reasonable deterrent against excessive fishing by non-residents, as is also the $2,500.00 license fee; *and the fact that these deterrents may work a temporary hardship on some residents is not in itself sufficient reason for invalidating a statute passed under the police power of the State.* As shown above in Toomer v. Witsell the State may require a higher license fee for non-residents and their fishing boats. There is no provision in the constitution which limits the amount of charge which may be imposed as a license fee, the question being one of reasonableness in the light of the object of the statute. City of Fort Worth v. Gulf Refining Co., 125 Texas 512, 83 S. W. (2d) 610, 27 Tex. Jur. pp. 893-894. It has not been shown by Depuglio that this is an unreasonable charge for the privilege of using such boats for commercial fishing purposes.

Where a state may validly require a license, it may make such classifications, subclassifications or exemptions as deemed necessary, so long as such classifications are not unreasonable and arbitrary. Hurt v. Cooper, 130 Texas 433, 110 S. W. (2d) 896; State v. Woodruff, 134 Fla. 437; 184 So. 81; 16 C. J. S. pp. 1378-1379. "A classification is never unreasonable or arbitrary in its inclusion or exclusion features so long as there is some basis for the differentiation between classes or subject matter included as compared to those excluded from its operation, provided the differentiation bears a reasonable relation to the purposes to be accomplished by the act." State v. Mason, 94

Utah 501, 78 P. (2d) 920, 117 A. L. R. 330; Hurt v. Cooper, supra; Hurt v. Cooper, 113 S. W. (2d) 929 (C. C. A.). The mere fact that discrimination is made does not necessarily vitiate the classification, and unless there is no substantial basis for the discrimination, there is no warrant for judicial interference. Hurt v. Cooper (Sup. Ct.), supra; Hurt v. Cooper (C. C. A., supra; 16 C. J. S. p. 1069. All that is required is that the enactment shall be applicable to all persons alike under the same circumstances. Beacon Lumber Co. v. Brown, 14 S. W. (2d) 1022. Waid v. City of Fort Worth, 258 S. W. 1114 (writ of error refused). "One who assails the classification * * * must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 78-79, 31 Sup. Ct. 337, 55 L. Ed. 369. Depuglio, in attacking the constitutionality of the statute in question, has not shown that the classification involved is unreasonable or arbitrary.

The occupation of Depuglio and his manner of carrying on such occupation were proper subjects of legislation under the police power, and the particular provisions of the statute under consideration bear a substantial relation to, and are reasonable means of exercising this power. The differentiation made by these provisions between resident and non-resident commercial fishing boats "bears a reasonable relation to the purposes to be accomplished by the act," and the resulting discrimination is not of such nature as to invalidate the act, since it operates alike on all persons under the same circumstances.

The trial court erred in holding the above statute of the State unconstitutional as applied to Depuglio and in granting a temporary injunction enjoining appellants from interfering with the operation of appellee's boats in connection with the enforcement of said article.

It follows that the judgment of the trial court should be reversed and the temporary injunction dissolved. It is so ordered.

Justice Garwood not sitting.

Opinion delivered March 10, 1948.

Rehearing overruled April 7, 1948.