Keith McKINLEY, Indiv. and as Independent Executor of the Estate of Royal McKinley, Deceased, Appellant,

v.

Flora McKINLEY, Appellee.

No. 633.

Court of Civil Appeals of Texas, Tyler.

July 6, 1972.

Rehearing Denied July 27, 1972.

Esir Tobolowsky, James H. Martin, Dallas, for appellant.

Jerry W. Biesel, Dallas, for appellee.

McKAY, Justice.

This suit was filed November 6, 1970, in the District Court by appellee Flora McKinley against Keith McKinley, Individually and as Independent Executor of the Estate of Royal McKinley, Deceased, Kenneth McKinley and Louise McKinley Leichtfuss for a temporary restraining order and injunction to prevent them from distributing and disposing of the assets of the estate of Royal McKinley whose will had been admitted to probate. By amended pleading appellee asked the court to act under Article 2524–1 Vernon's Ann.Tex. Civ.St. and to determine and set out by declaratory judgment that two savings and loan certificates totaling $26,400.00 were the community property of Royal McKinley, Deceased, and appellee, his surviving wife. Kenneth McKinley and Louise McKinley Leichtfuss were dismissed from the case. The trial court held the savings and loan certificates were community property and rendered judgment against appellant for $13,200.00 resulting in this appeal.

We are met at the outset in Point 1 with the contention of appellant that the District Court was without jurisdiction to hear and render judgment in this cause. The deceased died on October 15, 1970, and appellant qualified as Independent Executor on October 19, 1970, and on November 2, 1970, the Probate Court admitted the will of deceased to probate. On November 4, 1970, appellant, as executor, filed an inventory and appraisement which listed the two savings and loan certificates involved here as "separate" personal property, and such inventory and appraisement were approved by an order of the Probate Court on the same day. This suit was filed two days later on November 6, 1970.

Appellant maintains that appellee's cause of action to contest the nature of the personal property as evidenced by the two savings and loan certificates was by appeal or certiorari from the order of the Probate Court approving the inventory and appraisement, and where appellant has not followed any of the rules or statutes pertaining to appeal or certiorari from the Probate Court, the District Court was without jurisdiction. Point 1 is overruled.

Rules of Civil Procedure 332 through 337 set out the procedure in appealing a matter from the Probate Court to the District Court, and Rules 344 through 351 provide for an application for writ of certiorari made to the District Court to try de novo specific grounds of error claimed by the applicant to have been made by the Probate Court.

We agree that it is the settled law in Texas that the District Court has no original jurisdiction of probate proceedings in the administration of the estate of a deceased, and that its jurisdiction in this respect is appellate only. Dunaway v. Easter, 133 Tex. 309, 129 S.W.2d 286 (Comm. of Appeals, 1939); Callahan v. Stover, 263 S.W.2d 630 (Tex.Civ.App., Beaumont, 1953, writ ref.); Biddy v. Jones, 446 S.W. 2d 388 (Tex.Civ.App., Tyler, 1969, n. w. h.).

However, Article 2524–1, Uniform Declaratory Judgments Act, provides in Section 1 that courts of record "shall have

power to declare rights, status, and other legal relations," and Section 2 provides "(a)ny person interested under a deed, will, written contract * * * may have determined any question of construction or validity * * * and obtain a declaration of rights, status, or other legal relations thereunder." Section 4 provides that "(a)ny person interested as or through an executor, administrator * * * of the estate of a decedent * * * may have a declaration of rights or legal relations in respect thereto * * * (B) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or (c) To determine any question arising in the administration of the estate or trust * * *." Section 5 provides the enumeration in Sections 2, 3 and 4 does not restrict the powers conferred in Section 1, and Section 9 provides that when a suit under the act involves the determination of a fact issue, such issue may be tried and determined as in other civil actions.

■ It seems to be the rule of Texas that a declaratory judgment proceeding is an additional and cumulative remedy and does not supplant any existing remedy, and the existence of another adequate remedy does not bar the right to maintain an action for declaratory judgment. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709 (Tex.Supreme, 1945); Dodgen v. Depuglio, 146 Tex. 538, 209 S.W.2d 588 (1948); Crow v. City of Corpus Christi, 146 Tex. 558, 209 S.W.2d 922 (1948); Zamora v. Zamora, 241 S.W.2d 635 (Tex.Civ.App., El Paso, 1941, n. w. h.).

In Hilley v. Hilley, 305 S.W.2d 204 (Tex.Civ.App., Waco, 1957, writ ref., n. r. e.) a son of a deceased filed an action against the widow of deceased alleging that the widow was administratrix of deceased's estate and that she was claiming certain property as her separate property which was in fact community property, and

she had not included same in the inventory filed in the Probate Court. He asked the court to require the widow to file an inventory of the property she claimed as her separate estate and to enter a declaratory judgment decreeing such property to be community property. The widow claimed the Probate Court had exclusive jurisdiction and that the District Court had no jurisdiction. The court held: "(b)ut, regardless of whether the Probate Court did or did not have original jurisdiction to grant the relief sought by appellant, we think the remedy afforded to appellant under the Uniform Declaratory Judgments Act was cumulative of the remedy, if any, afforded to him under the provisions of Secs. 257, 258, 259 and 260 of the Texas Probate Code. Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 172 A.L.R. 837; Mason & Mason v. Brown, Tex.Civ.App., 182 S.W.2d 729. If that be true, then it follows that both the Probate Court and the District Court have concurrent jurisdiction to declare the rights of the parties to the proceeding with reference to the title to the property alleged to be claimed by appellee as her separate property. However, the remedy afforded by the Uniform Declaratory Judgments Act would be more expeditious and complete than that afforded by the Texas Probate Code, because the former would authorize the rendition of a final judgment that would definitely declare the rights of the parties in relation to what appears to be the only controverted issue between them."

■ We hold that the District Court did have jurisdiction.

■ The inventory of an estate filed in the Probate Court is prima facie evidence of title to property either listed or omitted, but it is not conclusive. Krueger v. Williams, 163 Tex. 545, 359 S.W.2d 48 (1962).

By Points 2 through 31 appellant challenges the findings of fact numbered 8 through 16[1] and says there is no evidence

---

1. "8) That the Savings Certificates No. 161928 and No. 101046 were pur-    chased during the marriage of the PLAINTIFF and the deceased.

and insufficient evidence to support the findings, and that each such finding is contrary to the great weight and preponderance of the evidence.

Royal McKinley, deceased, and appellee Flora McKinley were married on January 15, 1965, and each had been previously married two times. The deceased was a barber and was semi-retired but continued to work part-time after the marriage and he had earnings each year from 1965 through 1970 from wages, salaries and tips which varied from a low of $659.57 in 1965 to a high of $1926.00 in 1969. There was interest income during the same period of $3,008.29, $1,327.84, $1423.88, $1,755.02, $2,261.00, and $1,638.81 from promissory notes and savings and loan deposits. Both appellee and deceased were drawing social security benefits at the time of marriage and continued to do so during the marriage, and together they received more than $19,000.00 from that source. There was more than $9,000.00 added by deposits to the Dallas Federal Savings & Loan account and these deposits were either from interest on the deposits or from unknown sources. There were additions to the First Federal Savings & Loan account from interest on the deposits or from unknown sources from the joint banking account.

■ We believe the evidence is sufficient to sustain the findings of fact numbers 8 through 16, and, therefore, Points 2 through 31 are overruled.

■ Appellant's Point 32 complains of Conclusion of Law No. 1 [2] wherein the trial court concluded "(t)hat the term 'home' as used in the will" of deceased includes "the house, lot, furniture, appliances and yard tools * * *." We sustain this

"9) The sources of the money to purchase said Savings Certificates were the joint checking accounts and/or joint savings accounts.

"10) That both parties contributed sums of money to the accounts mentioned above during the course of the marriage.

"11) No evidence of probative value as to the origin of any monies, from the joint savings accounts or/and joint checking accounts, used in the purchase of the certificates in question was offered.

"12) During the marriage both parties made deposits of community income in the joint checking account.

"13) That funds from the joint checking account were deposited in the Joint savings accounts.

"14) That in the Dallas Federal Savings & Loan Account, there were 46 transactions during the marriage of the parties.

"15) That in the First Federal Savings & Loan Account, there were 35 transactions during the marriage.

"16) That no evidence of probative value was offered as to the nature of any of the transactions in regard to the two joint savings accounts."

2. "1) That the term 'home' as used in the will of ROYAL C. McKINLEY, Deceased is defined by this Court to include the house, lot, furniture, appliances and yard tools located at 6825 Sperry, Dallas, Texas.

"3) That the said Certificates heretofore mentioned in the total sum of $26,400 were the community property of the parties to the marriage and not the separate property of ROYAL C. MCKINLEY.

"4) That one-half of the $26,400 derived from the conversion of the Savings Certificate heretofore mentioned accrued to the benefit of the PLAINTIFF as her Community Property share.

"5) That KEITH MCKINLEY, Individually and as Independent Executor wrongfully took possession of said $13,200 and distributed it to KEITH MCKINLEY, and KENNETH MCKINLEY, LOUISE MCKINLEY LEICHTFUSS.

"6) That no evidence of probative value was offered to rebut the presumption set forth in Article 4619, Vernon Civil Statements wherein it states 'all the effects which the husband and wife possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved'."

point. We have been cited no case which holds that the word "home" includes the contents of a house used for a residence. 40 C.J.S. Home 419 defines the word home as "a dwelling house" or "the habitual abode of one's family" or "the place of constant or permanent residence". See Black's Law Dictionary, Revised 4th Ed. 1968.

However, the undisputed evidence reveals that only the television set valued at $500.00, a chair valued at $100.00, a bed valued at $35.00, and a washing machine valued at $75.00 were bought after marriage, and these items would be community property.

■ Appellant complains in Point 33 of the trial court's Conclusion of Law No. 3[2] that the two savings and loan certificates totaling $26,400.00 were community property, and also complains in Point 34 of Conclusion No. 4[2] that one-half of such sum accrued to the benefit of the appellee. We overrule these points. It was shown by the record that the funds in both the savings certificates accounts and the joint bank account had been so commingled that the source of the money could not be traced. While it is true that some of the funds owned by the deceased before marriage to appellee and evidenced by the savings and loan accounts might reasonably be a part of the savings and loan certificate accounts of the deceased and appellee at the time of his death, we hold that such funds had lost their identity because of the many transactions which commingled the funds in the name of both of them and the certificates became community property. Section 5.02, Family Code, V.T.C.A.; Tarver v. Tarver, 394 S.W.2d 780 (Tex.Supreme, 1965).

Point 35 complains of Conclusion of Law No. 5[2] in which the court found that appellant, individually and as executor, wrongfully took possession of $13,200.00 and distributed it to deceased's children. From what we have already stated here, the point is overruled inasmuch as we have held these funds to be community property

and appellant had no authority to distribute appellee's community interest to deceased's children as if it were his separate property. Likewise, we overrule Point 36 complaining of the court's Conclusion of Law No. 6[2] that the presumption of community had been overcome by the evidence.

By cross action appellant alleged that appellee had in her possession separate property of the deceased consisting of one automobile of the value of $400.00, one man's diamond ring of the value of $2,842.-00, household and kitchen furnishings of the value of $2,500.00, and one 38 caliber pistol, and that she received $125.00 as a payment on a separate property note after deceased's death. Appellant complains in Points 37, 38, 39, 40 and 41 that the trial court failed to find appellee took possession of the above items and converted them to her own use. From the evidence it appears the automobile, a man's diamond ring of the value of $400.00, certain household items hereinbefore itemized, one 38 caliber pistol, and $125.00 in money as payment on a note should be delivered to appellant as executor. These points are sustained.

By Point 42 appellant claims the trial court failed to find that appellee withdrew from First Federal Savings & Loan the sum of $4,737.43 and from Dallas Federal Savings & Loan the sum of $923.86 within a week after deceased's death and that such funds were community property and should be an offset against any claim by appellee. We sustain this point. It is undisputed that appellee withdrew these funds and that they were community property. One-half of these funds should be offset against the $13,200 judgment awarded appellee against appellant.

We have carefully examined appellant's remaining points and find them without merit.

The judgment of the trial court is reformed according to this opinion, and, as reformed, affirmed.