Juanita Mackey **TUTTLE,** Independent Co-Executrix of the Estate of Roy J. Tuttle, Deceased, Appellant,

v.

Gloria **SIMPSON,** Travis L. Simpson, Roy Joe Tuttle, Don E. Tuttle, Michael Roy Tuttle, Roy Joe Tuttle (Father of Myrna Louise Tuttle) and Don E. Tuttle (Father of Gary C. Tuttle and Ron Jayson Tuttle), Appellees.

No. 9515.

Court of Appeals of Texas, Texarkana.

June 30, 1987.

Joseph L. Perkins, Marshall, for appellant.

John C. Fisher, Longview, for Gloria Simpson & Travis Simpson.

David Crowson, Longview, for remaining appellees.

GRANT, Justice.

Juanita Tuttle appeals the judgment of the trial court in the probate proceeding involving the will of her deceased husband, Roy J. Tuttle. She is the co-executrix under the will and is the stepmother of Don E. Tuttle and Roy Joe Tuttle, the only children of Roy J. Tuttle. Travis Simpson is a neighbor and business partner of Don E. Tuttle. Gloria Simpson is a co-executrix under the will and was a neighbor of the decedent. All are beneficiaries under the Tuttle will.

Roy J. Tuttle died testate February 13, 1985. Mrs. Tuttle requested the court to construe the will, and in a proceeding bearing another cause number in the same court, she filed a motion for declaratory judgment. These two causes were consolidated after the trial, and all parties agree that they intended at the trial to dispose of the matters in controversy under both file numbers. The trial was without a jury, and the trial court made numerous findings of fact and conclusions of law.

Mrs. Tuttle raises three points of error contending that the trial court erred (1) in admitting testimony about oral statements, actions and conduct of the decedent, (2) in awarding portions of her community property to others under the will, and (3) in failing to award her a $40,000 certificate of deposit pursuant to a joint tenancy with the right of survivorship provision in the instrument.

The trial court found a description of property in the will devising Gloria Simpson a "20 acre strip on the north end" of a 97.85 acre tract in the E.A. Merchant Survey of Harrison County to be ambiguous.[1] The trial court then admitted testimony by Gloria Simpson and Don Tuttle that the deceased pointed out to each of them on separate occasions the perimeter of the land which was to be devised. The court used this testimony to specify the location of the twenty acre strip.

■ Mrs. Tuttle contends that there is no ambiguity in this provision, and therefore the court should not have received the extrinsic evidence. If the property description was ambiguous, extrinsic evidence becomes admissible to aid the court in determining the intent of the testator. *Kelley v. Martin*, 714 S.W.2d 303 (Tex.1986); *Lehman v. Corpus Christi National Bank*, 668 S.W.2d 687 (Tex.1984).

■ The appellees contend that Mrs. Tuttle waived her right to complain about the court's finding of an ambiguity, because she had asserted in her pleadings that an ambiguity existed. In reviewing her pleadings, we find a paragraph which states that the will "is ambiguous and unclear in several respects and it needs to be construed by the Court for the benefit of all concerned." The pleadings do not specifically state which provisions that Mrs. Tuttle is contending to be ambiguous. We cannot conclude that she is referring to this particular section of the will.

■ The appellees also point out that, although Mrs. Tuttle's attorney objected to the admission of the testimony of Don Tuttle on the basis of the parol evidence rule, there was no objection to the testimony of Gloria Simpson. They contend that this failure to object waived the parol evidence rule and thus made the extrinsic evidence admissible. The parol evidence rule is actually not a rule of evidence, but is a rule of substantive law. *Arkansas Oak Flooring Company v. Mixon*, 369 S.W.2d 804 (Tex.Civ.App.-Texarkana 1963, no writ). Consequently, evidence admitted in violation of the rule is without probative force in the interpretation of a written instrument even though it is admitted with-

---

1. Section VII of the will is as follows:
 It is my will and desire that the 20 acre strip on the north end of 97.85 acres in the E.A. Merchant Survey, Harrison County, Texas, shall pass to and vest in fee simple in GLORIA SIMPSON.

out objection. *Huddleston v. Fergeson,* 564 S.W.2d 448 (Tex.Civ.App.-Amarillo 1978, no writ). Thus, we must determine whether there is an ambiguity and only if there is an ambiguity will the extrinsic evidence be allowed to support the court's findings of fact. *Wheeler v. Thomas,* 328 S.W.2d 891 (Tex.Civ.App.-Beaumont 1959, no writ).

■ The approximate shape of the 97.85 acre tract is set forth below. The broken line represents the area which Mrs. Tuttle contends is the "20 acre strip on the north end." The rectangle in the upper right hand portion represents the area which Gloria Simpson contends was the portion intended to be devised by Roy J. Tuttle. The striped area shows a 1.27 acre tract which was previously transferred to the Simpsons.

In the case of *Farley v. Deslande,* 69 Tex. 458, 6 S.W. 786 (1888), the phrase "lower or south half" was determined to have a fixed meaning, and oral evidence of the meaning attached to the words was found inadmissible. The definition of the word *strip* in Webster's Dictionary include "a long narrow area of land or water." If a term is capable of more than one construction, evidence of extrinsic facts is admissible to show the intent of the testator. The will specifically states the end of the larger tract where the devise is to be located and further states the specific amount of acreage to be contained in the strip; however, there could be more than one twenty acre strip on the north end of the property, depending on how the lines are drawn. The provision does not state that the strip must extend all the way across the north end. If the will had described the property as being the northernmost

twenty acre tract or the north twenty acre tract, there could be only one construction of this language, but the only restriction made by the will was that this twenty acres be located somewhere on the north end. We hold that the trial court correctly found an ambiguity in this portion of the will.

■ Mrs. Tuttle also complains under this point that the admission of the testimony of Don Tuttle and Gloria Simpson violated Rule 601(b) of the Texas Rules of Evidence, commonly known as the Dead Man's Statute. No objection was made at the trial to Gloria Simpson's testimony. Therefore, any complaint to that testimony was waived. The waiver as to one witness is not a waiver as to other witnesses. *Womack v. First National Bank of San Augustine,* 613 S.W.2d 548 (Tex.Civ.App.-Tyler 1981, no writ); *Denbo v. Butler,* 523 S.W.2d 458 (Tex.Civ.App.-Houston [1st Dist.] 1975, no writ). The appellees also contend that since Gloria Simpson's testimony was admitted without objection, it can be used to corroborate Don Tuttle's testimony. They have cited no cases which so hold. They further contend that the Dead Man's Statute is not applicable, because the pointing out of the intended boundary by the deceased was not an oral statement as prohibited under Rule 601(b). However, without the admission of the oral statements accompanying the gestures, the gesturing would be meaningless. Thus, we find the Dead Man's Statute to be applicable to this type of testimony.

■ Looking at the relative interest of Don Tuttle, rather than his position as a party, we find that he is not an adversary of Juanita Tuttle on the issue involving the location of the twenty acres. The devise of the twenty acres is to Gloria Simpson only. Don Tuttle is a remainderman in interest of the residue left in the larger tract after the devise of the twenty acres, and thus shares a common interest with Juanita Tuttle who owns a life estate in the residue interest. The Supreme Court in *Rascoe v. Walker-Smith Company,* 98 Tex. 565, 86 S.W. 728 (1905), looked to whether there is actually an adverse position in applying the Dead Man's Statute rather than by the denom-

ination of being an opposite party in the suit. Don Tuttle should not be disqualified by the Dead Man's Statute when being called by a party whose actual interest on that issue is adverse. We hold that he was properly called as a witness. We also observe that Don Tuttle and Gloria Simpson have been represented by different attorneys throughout these proceedings.

Mrs. Tuttle further complains that the trial court awarded Travis Simpson and Don Tuttle tools and equipment one half of which belong to her as community property. The applicable provision of the will is as follows:

It is my will and desire that the shop and 3.7 acres in the I.R. North Survey, Harrison County, Texas, shall pass to and vest in fee simple in DON E. TUTTLE and TRAVIS L. SIMPSON, to share and share alike.

The trial court specifically found that the term *shop* included not only the building but also all tools and equipment located in the building.

The appellees contend that Mrs. Tuttle had made an election to take under the will and therefore cannot complain if a portion of her community property passes to other persons. In order for an election to be required, it must appear unequivocally that the husband attempted to dispose of property belonging to the wife. The presumption is that the husband did not intend to dispose of the wife's property in his will. *Atkinson v. Peron*, 447 S.W.2d 503 (Tex. Civ.App.-Corpus Christi 1969, writ ref'd n.r. e.).

The trial court heard testimony concerning the term *shop*. These witnesses did not purport to testify concerning the testator's use of that term but rather gave their opinion of what that term included.

The term *shop* is used as an abbreviation of the term *workshop*. This term has been defined in a variety of statutes over the years to mean generally a shop where any manufacture or handwork was carried on whether for the purpose of repair or manufacture. *Wade v. Taylor*, 228 S.W.2d 922 (Tex.Civ.App.-Amarillo 1949, no writ).

We have not found any Texas cases concerning whether the term *shop*, for the purposes of a conveyance or will, includes its contents. A New York case, *Re Stephan's Will*, 199 Misc. 118, 98 N.Y.S.2d 416 (1950), held that the contents of a house and a workshop passed under a devise of the house and workshop where the house was given to a daughter and a son as a tenancy in common and the workshop was given to another son who had worked with the testator in his construction and operation and owned an adjacent home. Annot., 29 A.L.R.3d 574, 588 (1970). The court observed that the will contained no residuary clause and that such absence gave rise to a presumption that the testator thought that he had made a complete disposition of his entire estate by the will, particularly since the testator disposed of every item of property he owned at the time of his death and specifically mentioned each item except for the contents of the house and workshop.

In the present case, although there was no residuary clause in the will, there was another section of the will which bequeathed "all personal property, including ... tools" to Juanita Tuttle. Therefore, the rationale does not exist in the present case that existed in the New York case for including the tools as a part of the shop.

The case of *McKinley v. McKinley*, 483 S.W.2d 310 (Tex.Civ.App.-Tyler 1972), *rev'd on other grounds*, 496 S.W.2d 540 (Tex. 1973), is analagous to the present case in that the court was asked to determine if the term *home* included the contents of the property. The court found that the term *home* did not include the personal property found within the home.

In light of the presumption that the testator did not intend to will property belonging to his wife to other beneficiaries, we find that the language did not unequivocally attempt to dispose of Mrs. Tuttle's one-half community interest in the contents of the shop. We do not address the trial court's holding that Travis Simpson and Don Tuttle are entitled to the testator's community one half of the tools and equip-

ment, because this matter was not raised on appeal.

In her final point of error, Mrs. Tuttle argues that a $40,000 certificate of deposit was improperly classified by the court as community property. As a result of this classification the trial court determined that one half of the certificate of deposit belonged to Mrs. Tuttle as having been her community one half, and the testator's one half was distributed according to the terms of the will to Mrs. Tuttle, Don E. Tuttle and Roy Joe Tuttle. The certificate of deposit states on its face that it is an account classified as a joint tenancy with right of survivorship, and Mrs. Tuttle thus contends that the certificate of deposit is hers in its entirety by right, as the surviving signatory.

Tex.Fam.Code Ann. § 5.02 (Vernon 1975) states that property possessed by either spouse on dissolution of the marriage is presumed to be community property. This presumption may be overcome by the claimant's proof that the property is separate as defined in Tex.Fam. Code Ann. § 5.01 (Vernon 1975). In this case, there is no proof of the separate nature of the funds represented by the certificate of deposit, and no reference has been made to the tracing of specific amounts of property into the account in order to lay claim to any particular part of it. *McKinley v. McKinley,* 496 S.W.2d 540 (Tex.1973). The certificate of deposit must therefore be categorized as community property and could not become a joint tenancy unless the property had been partitioned in accordance with Article XVI, Section 15 of the Texas Constitution. The mere deposit of community funds in a joint account does not accomplish a partition of community funds and the creation of a joint tenancy with right of survivorship. *Maples v. Nimitz,* 615 S.W.2d 690 (Tex. 1981). A partition must be accomplished by the spouses before creation of the joint

tenancy with right of survivorship. *Maples v. Nimitz,* at 695.

Section 46(b) of the Texas Probate Code provides a method for converting an account into a joint tenancy:

A written agreement between spouses and a bank, savings and loan, credit union, or other financial institution may provide that existing funds or securities on deposit and funds and securities to be deposited in the future and interest and income thereon shall by that agreement be partitioned into separate property and may further provide that the property partitioned by that agreement be held in joint tenancies and pass by right of survivorship.

Tex.Prob.Code Ann. § 46(b) (Vernon Supp. 1987).

We interpret this provision to require a written agreement which is signed by the parties to that agreement. In the present case, there is no written agreement signed by the parties. Furthermore, to meet the requirements of Section 46(b), such an agreement would have to contain language partitioning the property into separate property. Even if the language on the certificate of deposit was construed to be a written agreement between the parties, it contains no language purporting to partition the property. We do not address the issue of whether such a partition and creation of a joint tenancy can be accomplished in a single step. *See* J. McKnight, *The Constitutional Redefinition of Texas Matrimonial Property As It Affects Antenuptial and Interspousal Transactions,* 13 St. Mary's L.J. 449, 470 (1982).

Mrs. Tuttle also cites Tex.Prob. Code Ann. § 439(a) (Vernon 1980) [2] which states that, "Sums remaining on deposit at the death of a party to a joint account belong to the surviving party ... *if, by a written agreement signed by the party who dies,* the interest of such deceased party is made to survive to the surviving

---

**2.** The Nontestamentary Transfers section of the Probate Code (in which Section 439(a) is found) originally contained the following language in Section 437: "A multiple-party account created with community property funds is subject to Article XVI, Section 15, of the Texas Constitution, and will not in any way alter community property rights." In 1981, Section 437 was amended deleting this language.

party." In the present case, the certificate of deposit does not bear the signature of either party, and no other written instrument is offered to show such an agreement.

The judgment is affirmed as to the trial court's disposition of the certificate of deposit and as to the trial court's interpretation of the location of the twenty acre strip on the north end of the 97.85 acres in the E.A. Merchant Survey of Harrison County, Texas. The judgment is reversed as to the devise of Juanita Tuttle's one-half community interest in the tools contained in the shop on the 3.7 acres.