

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00060-CV
_____


ESTATE OF RONNIE WREN, Appellant

V.

AL BASTINELLI AND SUE BASTINELLI, Appellees

On Appeal from the 6th Judicial District Court
Fannin County, Texas
Trial Court No. 37071

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss
Concurring Opinion by Justice Moseley

MEMORANDUM OPINION

Al and Sue Bastinelli rented two self-storage units from the now deceased Ronnie Wren under a written rental agreement that insulated Wren from liability for any theft loss sustained by the Bastinellis "unless the same is due to the . . . gross negligence" of Wren. Then, two successive criminal acts were directed at the Bastinellis' units. In April 2005, the Bastinellis' locks were cut off of both units, but nothing was stolen from the units at that time. Although Officer Mark Johnson made a report of this initial incident, the Bastinellis were not informed of this break-in and did not know that their lock had been taken and their property left unprotected. Thereafter, someone broke into one of the Bastinellis' units and took property including antiques, art, books, and furniture. The Bastinellis sued, obtained a jury finding of Wren's gross negligence that proximately caused the damages, and recovered judgment against the Estate of Wren in the amount of $8,870.00.

The Estate appeals on grounds that the trial court erred in excluding certain evidence and that the evidence was insufficient to establish recovery. We reverse the trial court's judgment because we hold that, although (1) the trial court did not err in excluding either the statements Wren made to Johnson or the e-mails from Wren to his daughter, (2) no evidence supported the finding of gross negligence.

*(1)*     *The Trial Court Did Not Err in Excluding Either the Statements Wren Made to Johnson or the E-mails from Wren to His Daughter*

On appeal, the Estate complains that the trial court erred in failing to admit e-mails and testimony from Johnson that negated the required subjective-intent element of gross negligence—the

2

Estate contends that they would demonstrate Wren believed that police were contacting the Bastinellis and that a manager's lock was placed on the unit after the first break-in. We find that the trial court properly excluded as hearsay Johnson's testimony and the e-mails.

The admission or exclusion of evidence is a matter within the sound discretion of the trial court. *Daniels v. Yancey*, 175 S.W.3d 889, 895 (Tex. App.—Texarkana 2005, no pet.) (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995)). Thus, we review for abuse of discretion the trial court's decision in excluding Wren's reported statements. *Id.* A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *Holtzman v. Holtzman*, 993 S.W.2d 729, 734 (Tex. App.—Texarkana 1999, pet. denied) (citing *Downer v. Aquamarine Operators*, 701 S.W.2d 238 (Tex. 1985)).

During cross-examination of Johnson, the Estate established that Johnson talked to Wren about the criminal act. Before the questioning elicited the substance of the conversation, counsel for the Bastinellis objected on the basis of hearsay and Rule 601(b) of the Texas Rules of Evidence. When the hearsay objection was sustained, counsel for the Estate agreed to make an offer of proof at a later time.

Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). Counsel for the Estate claimed the evidence was not hearsay because it related to Wren's then-existing state of mind. *See* TEX. R. EVID. 803(3). Statements admitted under this rule, however,

3

"are usually spontaneous remarks about pain or some other sensation, made by the declarant while the sensation . . . is being experienced." *Power v. Kelley*, 70 S.W.3d 137, 141 (Tex. App.—San Antonio 2001, pet. denied). Statements that go beyond the declarant's emotional state to describe past acts do not fit within this exception to the hearsay rule. *Menefee v. State*, 211 S.W.3d 893, 905 (Tex. App.—Texarkana 2006, pet. ref'd) (citing *Glover v. State*, 102 S.W.3d 754, 762–63 (Tex. App.—Texarkana 2002, pet. ref'd)).

We examine the purported substance of Johnson's testimony to determine whether the trial court erred in excluding this evidence.[1] Instead of a question-and-answer offer of proof from Johnson, the Estate's counsel simply stated that Johnson's testimony would show "Ronnie Wren told him that he believed the police were contacting the tenants and that Ronnie Wren had placed a manager's lock on the premises." The Bastinellis specifically disagreed and told the trial court that Johnson, a witness for the Bastinellis, would not have testified in accordance with the Estate's offer of proof. The Estate declined the trial court's invitation to question Johnson outside of the jury's presence on these matters. Because the record does not contain Johnson's testimony, and conflict as to the substance of the testimony existed, we cannot conclude, with confidence, that the Estate could establish entitlement to admit Wren's statements using the Rule 803(3) hearsay exception. Further, it appears that these statements about the April incident were made to Johnson after the

---

[1]In order to preserve error regarding a trial court's decision to exclude evidence, the complaining party must comply with Rule 103 of the Texas Rules of Evidence by making an "offer of proof" which sets forth the substance of the proffered evidence. TEX. R. EVID. 103(a)(2).

theft, which occurred months later. Thus, the testimony from Johnson would not refer to Wren's spontaneous statement of his then-existing state of mind during the theft, but rather Wren's version of past events.[2] As such, the trial court did not abuse its discretion in excluding Johnson's testimony.

The Estate also sought admission of two e-mails written by Wren to his daughter which read, "I found my worksheet for April 13 and it appears I put a manager lock on it because it had the customer lock missing," and "Jason gave the Bastinellis' contact info and [the police] said they would contact them. Jason [the manager] said he could handle it and [the police] said they would contact them." The Estate claimed the e-mails should also be admitted under the state-of-mind exception to the hearsay rule. The letters were both written after suit was filed and, by admission of Wren's wife, in anticipation of litigation. Thus, rather than spontaneous statements about Wren's

---

[2]The Bastinellis also objected that Johnson's testimony would violate the Dead Man's Rule. Rule 601(b) of the Texas Rules of Evidence states:

> In civil actions by or against executors, administrators, or guardians, in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any oral statement by the testator, intestate or ward, unless that testimony to the oral statement is corroborated or unless the witness is called at the trial to testify thereto by the opposite party.

TEX. R. EVID. 601(b). Johnson was not a party to the litigation and did not otherwise have an interest in the suit. The statute was inapplicable as to him. *See Adams v. Barry*, 560 S.W.2d 935, 937 (Tex. 1978); *Tuttle v. Simpson*, 735 S.W.2d 539, 542–43 (Tex. App.—Texarkana 1987, no writ). Because we determined the trial court did not err in excluding the evidence on hearsay grounds, we need not further address this issue.

5

state of mind existing at the time of the theft, these e-mails depicted his version of past events, and would not qualify under Rule 803(3) as exceptions to hearsay.

Next, the Estate sought to admit the e-mails under the business records hearsay exception. Rule 803(6) exempts from hearsay a

> data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . data compilation . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

TEX. R. EVID. 803(6). E-mails written in preparation of litigation indicate a lack of trustworthiness and do not qualify as business records under the above rule. *Sessums v. State*, 129 S.W.3d 242, 249 (Tex. App.—Texarkana 2004, pet. ref'd) (citing *Freeman v. Am. Motorists Ins. Co.*, 53 S.W.3d 710, 714–15 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Here, there was no testimony suggesting that records similar to the e-mails were kept in the ordinary course of business. The e-mails were prepared after Wren received notice of a claim and contained the subject line "Suit." By Wren's wife's admission, they were created specifically to prepare for defense of the Bastinellis' claims and, thus, could not qualify as business records for evidentiary purposes. We conclude that the trial court did not abuse its discretion in deciding that the e-mails constituted inadmissible hearsay. This point of error is overruled.

6

*(2)      No Evidence Supported the Finding of Gross Negligence*

The Estate asserts that the evidence is legally and factually insufficient to support the jury finding of gross negligence. Because we are bound by statutory and caselaw definitions of gross negligence, and because the statutory definition of gross negligence was submitted to the jury in this case and is not attacked as being inapplicable, we agree.

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When assessing the Estate's "no evidence" challenge to the legal sufficiency of the evidence, we will consider only the evidence and inferences that tend to support the finding of gross negligence and will disregard all evidence and inferences to the contrary. *Hooper v. Smallwood*, 270 S.W.3d 234, 240 (Tex. App.—Texarkana 2008, pet. denied); *Kinder Morgan N. Tex. Pipeline, L.P. v. Justiss*, 202 S.W.3d 427, 437 (Tex. App.—Texarkana 2006, no pet.) (citing *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex. 2001)). As long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the juror. *Hooper*, 270 S.W.3d at 240.

On the other hand, if there was a complete absence of evidence of a vital fact, if the court was barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, if the evidence offered to prove a vital fact was no more than a mere scintilla, or if the evidence conclusively established the opposite of the vital fact, a no-evidence point will be sustained.

7

*Justiss*, 202 S.W.3d at 437 (citing *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998)). More than a scintilla of evidence exists if it furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Id.* (citing *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002)).

When the factual sufficiency of the evidence is challenged, we determine whether the verdict was against the great weight and preponderance of the evidence. *Hooper*, 270 S.W.3d at 240 (citing *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *In re Estate of Steed*, 152 S.W.3d 797, 806 (Tex. App.—Texarkana 2004, pet. denied)). In conducting this factual sufficiency analysis, we weigh all the evidence, and will only set aside the verdict if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Justiss*, 202 S.W.3d at 437 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). Since we are not a fact-finder, we will not pass on the witnesses' credibility or substitute our judgment for that of the jury, even if the evidence would clearly support a different result. *Id.* (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ellis*, 971 S.W.2d at 407).

Gross negligence includes both an objective and subjective element.[3] TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (Vernon 2008). It is an act or omission "which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.* "Extreme risk" is not "a remote possibility of injury or even a high probability of minor harm, but rather the likelihood of serious injury to the plaintiff." *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex. 2001). Also, the act or omission must also be one where "the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." *Id.* Thus, the risk must be proven with two elements, a likelihood element and a seriousness-of-injury element; and the proof must show the actor is aware of both elements.[4]

The Bastinellis' storage unit was broken into in April 2005. Wren owned and operated the storage facility. The evidence established that he was aware a criminal actor broke the lock on the

---

[3]Although a defendant "cannot be grossly negligent without being negligent," evidence of simple negligence is not enough to prove either the objective or subjective elements of gross negligence. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 206 (Tex. App.—Texarkana 2008, no pet.) (citing *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied)); *see Universal Servs. Co. v. Ung*, 904 S.W.2d 638, 641 (Tex. 1995). Either element may be proven by circumstantial evidence, however. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998).

[4]While we have serious doubts that the parties contemplated all of this when they agreed to a contract that used the term "gross negligence," if they contemplated anything about it, the facts are that they did use the term and that term is defined in this way. We are bound by the definition.

9

Bastinellis' unit and that Wren, despite having the Bastinellis' telephone numbers, failed to contact them.[5] As a result, the unit was without a lock for several months. From this flowed the theft of the Bastinellis' property in July 2005.

Given the evidence, a reasonable jury could have determined that failing to contact the Bastinellis or otherwise providing for security for their unit involved a high likelihood of loss or damage. The jury could also have found that Wren was subjectively aware of the risk but did not care about it. *Agruim U.S., Inc. v. Clark*, 179 S.W.3d 765, 767 (Tex. App.—Amarillo 2005, pet. denied) (quoting *Diamond Shamrock Refining Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005)). This satisfies the high-likelihood-of-loss element.

Missing, however, are the elements of serious harm and Wren's awareness of a prospect for serious harm. While there is proof that much property was lost—and we do not minimize the impact of that loss to the Bastinellis—the loss was not of the type required by Texas Supreme Court precedent. As that court has said, "[e]xtreme risk" also requires "the likelihood of serious injury to the plaintiff," a risk of which the defendant must have been aware. *Harrison*, 70 S.W.3d at 785. It is insufficient to show a high likelihood of minor harm. *Id.*

An analogous situation was presented in the case of *Hironymous v. Allison*, 893 S.W.2d 578 (Tex. App.—Corpus Christi 1994, writ denied). In that case, owners of personal property sued the manager of a storage warehouse for wrongful sale of their property, including appliances, dishes, and

---

[5]Johnson testified that it was not the responsibility of the police to contact storage unit owners to notify them about the incident.

furniture. *Id.* at 580. In addressing the serious harm element, the court stated that, while "[o]ne might interpret the complete loss of any property to be the most serious harm possible," the items lost were replaceable, and the property loss could not be considered serious harm. *Id.* at 584 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).[6] Rejecting the owners' contention that the lost property included precious memorabilia, the court reiterated that "[t]o support a finding of gross negligence . . . the appellants [must] have subjectively understood the existence of the risk of losing difficult-to-replace material goods and irreplaceable memorabilia." *Id.* Because there was no evidence that the warehouse owners "had any idea of the enormity of the [property owners'] potential loss," and were not told of the special contents of the warehouse, they could not be found grossly negligent. *Id.*

As in *Hironymous*, this record contains no proof that loss of the property would constitute a grievous injury or that the type of property involved was irreplaceable. There is also no proof that Wren was aware of the value or nature of the property stored in the units. For that reason, there is no proof to establish "gross negligence" as defined by statute and binding caselaw.

We reverse the judgment of the trial court and render a judgment that the Bastinellis take nothing.

                                         Josh R. Morriss, III
                                         Chief Justice

---

[6]*See Moriel*, 879 S.W.2d at 24 (reciting rule that serious harm must be "independent and qualitatively different from the sort of injuries that typically result from bad faith or breach of contract.")

11

CONCURRING OPINION

Although I concur with the conclusion at which our learned Chief Justice has arrived in this matter and applaud his scholarly drafting of the opinion, I do so reluctantly because the result here seems to violate the "tain't fair" rule. Despite my reticence, we are obligated to follow the law, not look to the results we believe to be fair and then attempt to justify the means we took to achieve that end.

Most people (lawyers and laity alike) generally think of gross negligence as being the common-law definition set out in *Burk Royalty Co. v. Walls*, 616 S.W.2d 911 (Tex. 1981):

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Id.* at 920.

However, the common-sense definition above is changed by statute (TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(11) (Vernon 2008)):

> "Gross negligence" means an act or omission:
>
> (A)    which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
>
> (B)    of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

12

Glaringly absent from the statutory definition is the qualifier "to be the ground for exemplary damages."

In this case, a phrase which is generally employed in the tort realm to determine whether punitive damages can be recovered (in addition to actual damages) is injected by contract to a circumstance under which no recovery for misfeasance is possible unless gross negligence is shown. Therefore, each of the elements (including "extreme risk") is incorporated into elements which are necessary to be proven. "[A] gross negligence finding may be upheld on appeal only if there is some evidence that a) the defendant's conduct created an extreme risk of harm, and b) the defendant was aware of the extreme risk." *Wal-Mart Stores v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993).

We then must look at what constitutes "extreme risk." The harm to be anticipated from the conduct must be extraordinary harm such as "death, grievous physical injury, or financial ruin." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 24 (Tex. 1994); *Celanese Ltd. v. Chem. Waste Mgmt., Inc.*, 75 S.W.3d 593, 600 (Tex. App.—Texarkana 2002, pet. ref'd).

When the element of extreme risk (along with the actual, subjective awareness of that risk by the miscreant) is required to be proven, it would seem that the only way that a claimant would be able to recover from the operator of a self-storage unit would be to show that something as valuable as the crown jewels were stored in the facility, that the operator of the self-storage unit was fully aware that the immensely valuable items were stored, and yet the operator acted with conscious indifference to the dangers involved, occasioning great loss.

13

No mention was made at trial or on appeal of the fair notice doctrine regarding this heightened standard of liability. *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993). However, even if the disclaimer of liability had been contained in the contract in such a fashion as to bring immediate attention to itself and thus comply with the fair notice doctrine, it is doubtful that any layman would comprehend that the practical effect would be to totally exculpate the self-storage facility operator from virtually any liability whatsoever. After all, people do not generally store property sufficiently valuable to occasion extreme risk in a self-storage facility. Most people would believe that such a limitation would excuse only accidental tortious conduct, raising the standard to the conscious indifference of the consequences.

The issues which arise concerning the elevation of the standard of liability to gross negligence by contract appear to be rare in appellate opinions. Alert practitioners representing various landlords or bailees may commence its wider use in drafting future contracts, effectively substantially reducing the expected standard of care which the public generally assumes to be in place.

Applying the statutory definition of gross negligence to the circumstances at hand can be compared to supplying the courts with shoes that will not fit. Although the shoes pinch and bind, we are forced to wear them.

All this is said as a premise to urge a change in the statutory definition of "gross negligence" to the effect that the current definition applies when used as a predicate to the recovery of punitive

damages, but to exclude the "extreme risk" factor when only actual damages are sought to be recovered.

Bailey C. Moseley
Justice

Date Submitted:     December 21, 2009
Date Decided:       January 20, 2010